HART, &c.<br>
vs.<br>
SOWARD.<br>
<br>
tween villenage in England, and slavery in Kentucky, is not recognized

---

## Hart, &c. vs. Soward.

### ERROR TO MASON CIRCUIT.

1. Where, by anti-nuptial contract it is agreed that the wife shall hold her property, (land and slaves) to her separate use, to dispose of as she please during the coverture, by deed or will, and the wife die without making any disposition thereof, the agreement is at an end, and the husband has the same right therein as if the agreement had not existed. (12 *B. Mon.*, 391; *Cox v. Coleman*, 13 *B. Mon.*)

2. The statute of 1846, session acts 42, has no other effect upon the rights of the husband in slaves of the wife than to limit his estate to that of an estate for life, whether there be issue of marriage or not.

3. The fact that a husband, upon the death of his wife, claimed the the absolute estate in negroes when he had only a life estate, created no forfeiture if the estate which he rightfully might claim, unless in case of removal of slaves out of the state by tenants for life.

Judge SIMPSON delivered the opinion of the court.

In January 1850, Margaretta Gorsuch, who owned a considerable estate consisting of land, slaves, and personalty, intermarried with Alfred Soward. She died in May 1851, intestate, without any issue, leaving her husband surviving. Prior to their marriage, but in contemplation thereof, the parties executed the following anti-nuptial agreement, which was after-

ORD. PET.<br>
<br>
Case 22.<br>
<br>
<br>
<br>
<br>
<br>
<br>
<br>
<br>
<br>
<br>
<br>
<br>
<br>
<br>
January 4.<br>
<br>
Case stated.

wards duly recorded, viz: "Whereas, a marriage is intended to be had between the undersigned, Alfred Soward, and Margaretta Gorsuch; now it is agreed between the said parties that the said Margaretta Gorsuch shall hold and possess, for her own separate, and exclusive use and benefit, all the estate, real, personal, and mixed, now owned and possessed by her, and the future rents, issues, and profits thereof, free from the control or disposition of the said Alfred Soward—it being intended that the said Margaretta Gorsuch shall hold the said property as her separate estate, and in the same manner as if she were sole and unmarried, she hereby retaining authority and power to dispose of the same, in such manner as she may choose in her lifetime, by sale and conveyance, or by last will and testament."

After the death of the wife this action was brought by her brothers and sisters, and the descendants of such of them as were dead, as her heirs at law, against her surviving husband, for the slaves which belonged to her at the time of the marriage, and the possession of which, since her death, had been retained by him.

The plaintiffs relied upon three grounds to sustain their right to a recovery of the slaves in this action:

First. It is contended, that by the anti-nuptial agreement the husband surrendered all his marital rights in the property of his wife, and consequently that he has no more right to any part of it, after the death, than he had during her lifetime.

The wife died without having exercised the powers conferred on her by this agreement, and did not make any disposition of her slaves in her lifetime. The law, therefore, has to dispose of them, and the question is, how far the disposition which the law would make of them, independent of the anti-nuptial agreement of the parties, is to be controlled or affected by it?

If this agreement contained any provisions on the subject of the right of succession to the property, af-

ter the death of the wife, this question could not arise; but, as it only secured to the wife the right to control and dispose of the property during the coverture, as if she were unmarried, and as she made no disposition of it to take effect after her death, the agreement, having accomplished the object of its existence, and the purpose contemplated by the parties in its execution, became, by her death, inoperative, according to its own nature, and left her estate to the disposition of the law. Such was the view which was entertained by this court, in the case of *Hart, et al v. Soward,* 12 *B. Mon.,* 391, in which it was decided that this agreement did not deprive the husband of the right to administer upon his wife's estate. The husband, by the instrument, surrendered all right to the property of his wife during coverture, and assented to the exercise of the powers it conferred upon her; but he did not surrender or divest himself of any right which might accrue to him if she should die, without having executed these powers. Upon her death the estate lost its character of separate estate, because from its very nature, such an estate could not exist after her death, and it then became subject, in all respects, to those legal rights that it would have been subject to upon her death if it had never been the separate estate of the wife. This principle was recognized and applied in *Cox v. Coleman,* 13 *B. Monroe,* to a case where the husband after his marriage conveyed all the estate which had previously belonged to his wife, to a trustee for her sole and separate use, giving her full power to direct, in writing, any disposition of it that she deemed proper. It was there decided, that upon the death of the wife, leaving the power unexecuted, the husband had the same right to the property that he would have had if the deed of trust had not been executed; the same principle had been previously settled in the case of *Brown, &c. v. Alden, &c.,* decided in 1852. There does not seem to be any material distinction between these cases and the present one. In the cases referred to the sepa-

HART, &c.
vs.
SOWARD.

agreed that the wife shall hold her property, (land and slaves,) to her separate use, to dispose of as she pleases during the coverture, by deed or will, and the wife dies without making any disposition thereof, the agreement is at an end, and the husband has the same right therein as if the agreement had not existed. (12 *B. Monroe,* 391; *Cox. v. Coleman,* 13 *B. Monroe.*)

HART, &c.
vs.
SOWARD.

rate estate was created by deeds, executed after the marriage; in this case it was created by an anti-nuptial agreement, but the time or manner of its creation cannot affect the right of the husband to the property of the wife after the termination of the separate estate.

Second. But it is argued, that under the operation of the act of 1846, (*Session Acts* 1845-6, *page* 42,) further to protect the rights of married women, that the slaves of the wife become real estate, and the husband has only the same interest in, and right to them after her death, that he has in her other real estate, and that, as in this case, there was no issue of the marriage, the husband not having a right to the land which belonged to her, as tenant by the curtesy, has not a life estate in her slaves under the statute.

2. The statute of 1846, Ses. Acts, 42, has no other effect upon the rights of the husband in slaves of the wife than to limit his estate to that of an estate for life, whether there be issue of the marriage or not.

This argument is based upon a misconception of the statute in question. It does not make the slaves of the wife real estate for all purposes, but the first section points out specifically the purposes for which it is to be treated as real estate, and the second section provides, that on the death of the wife her slaves "shall descend to her heirs at law, as lands descend by the laws of this commonwealth, subject to a life estate of the husband surviving for his life and no longer." The effect of this provision is to reduce his estate, which before the passage of the statute was absolute, down to a mere life estate. But his life estate is not conditional or dependent upon there having been issue of the marriage. The slaves of the wife descend to her heirs at law, but subject to this life estate of the husband, which *he is permitted* to retain in them. The statute expressly allows him a life estate in them, in all cases where he survives his wife, and there is nothing in any of its provisions that indicates an intention upon the part of the legislature to confine his right therein to such a state of case as would make him tenant, by the curtesy, of his wife's lands. Whenever the husband survives the wife he is entitled to a life estate in her slaves. The same con-

struction was given to the statute in the case of
*Brown, &c. v. Alden, supra.*

Third. The husband appears to have claimed the
slaves as his own absolute property, and not merely
as tenant for life, it is therefore contended that he had
forfeited his life estate therein by acts inconsistent
with the reversionary right of the heirs at law.

Although, by the ancient law, a tenant for life might
forfeit his estate by claiming the fee in a court of re-
cord, yet no parol disclaimer of the right of the re-
versioner or remainder-man operated as a forfeiture
of his estate. *Robinson v. Miller,* 2 *B. Mon.,* 292;
*Merriman v. Caldwell's heirs,* 8 *B. Mon.,* 32. Nor has
this doctrine of the forfeiture of the life estate in
lands, in any state of case, been as yet practically ap-
plied in this state, and there does not seem to be any
good reason for its application in reference to slaves,
except in the case provided for by the statute, of the
removal of them out of the state by the tenant for
life, without the consent of the person in reversion or
remainder. A claim of absolute property in slaves
by a tenant for life might justify the person in rever-
sion or remainder to bring an equitable action to es-
tablish his right, and to restrain the tenant for life
from the commission of any act inconsistent with
that right; but as the legislature has not made any
other act of the tenant for life, but that of a removal
of the slaves out of the state without the consent of
the person in reversion or remainder, operate as a
forfeiture of the life estate, we do not feel at liberty
to extend the principle beyond the limits thus pre-
scribed, nor apply it to any case where the slaves are
still within the jurisdiction of the courts of this state,
and subject to such restraining orders as may be
deemed equitable and proper for the protection of the
rights of the person in reversion or remainder. Be-
sides, there is no cause for the application of the
principle in a case like the present, where the surviv-
ing husband may have made, and probably did make,
a mistake with respect to the extent of his title to the

---

HART, &c.
*vs.*
SOWARD.

3. The fact
that a husband,
upon the death
of his wife,
claimed the ab-
solute estate in
negroes when
he had only a
life estate, cre-
ated no forfeit-
ure of the es-
tate which he
r i g h t f u l l y
might claim,
unless in case
of removal of
slaves out of
the state by ten-
ants for life.

slaves, not fully comprehending the change that the recent law had effected on the husband's right to the slaves of his wife : or where he may have claimed them under a parol gift from his wife during the marriage, as was said to be the case upon the trial, and believed he could establish the gift by proof, and thereby evince an absolute right to them in himself, under the power conferred upon his wife by the antinuptial agreement.

The law of the case was correctly expounded by the court below, in the instructions given to the jury upon the trial, and the verdict and judgment against the plaintiffs was proper under the circumstances of the case.

Wherefore, the judgment is affirmed.

HORD & PAYNE for plaintiffs ; H. TAYLOR for defendant.