Hillsborough, }
June, 1899. }

## Newton, *Ap't*, v. Truesdale, *Ex'r*.

An agreement between husband and wife, entered into for the expressed purpose of settling controversies regarding their respective interests in joint property held by the husband and adjusting the rights of the parties therein, and the payment by him to her of a certain sum in " satisfaction for all her right, title, interest, and separate estate " in such property, do not bar her right to a distributive share of his estate after his decease.

The fact that a wife lived apart from her husband for a few years prior to his decease is not sufficient to bar her claim for an allowance from his estate, in the absence of evidence that the separation was through her fault or by her wish.

Whether an allowance by the probate court to the widow of a person deceased is reasonable in amount is a question of fact for the trial term.

PROBATE APPEAL. Facts found by the court. In 1849, Asa K. Emery and Martha J. Emery were married. At that time he had property of about $2,000, and she of about $1,100. They lived together until the spring of 1885, having in the meantime added to their property. April 29, 1885, they agreed, by a writing under seal, as follows :

" Know all men by these presents: That whereas certain disputes and controversies have arisen between Asa K. Emery of, etc., and Martha J. Emery, wife of said Asa K. Emery, in regard to their respective interests in and to certain real estate, situate in said Manchester, now standing in the name of said Asa K. Emery, and certain personal property now in the possession of said Asa K. Emery, in all amounting to about $15,000 :

" Now, for the purpose of settling the same and of adjusting the rights of the respective parties therein and thereto, to the end that the said Martha J. Emery may receive her separate estate therein, it is mutually agreed between them as follows :

" Said Martha J. Emery hereby agrees to receive and accept from said Asa K. Emery, as her separate estate therein, the sum of $6,000 in full payment and satisfaction for all her right, title, interest, and separate estate in and to said real estate and personal property; and, in consideration of the payment of said $6,000 as aforesaid, she hereby releases all right, title, interest, or claim in and to said real estate and the balance of said personal property remaining after the payment of said $6,000 as aforesaid. And said Martha J. Emery, for the consideration aforesaid, hereby covenants and agrees that she will sign and execute all proper deeds of said real estate when required so to do

by said Asa K. Emery; and she further agrees to pay out of her separate estate all debts hereafter contracted by her, and to relieve and release him from all liability therefrom.

"And the said Asa K. Emery, in consideration of the agreements of said Martha J. Emery herein contained, hereby agrees to pay to said Martha J. Emery the sum of $6,000 in full payment and satisfaction for all her right, title, interest, and separate estate in and to said real estate and personal property, upon the terms and conditions and for the purposes herein set forth; and he hereby releases all right, title, interest, and claim in and to said $6,000, and hereby agrees that the same may be held by said Martha J. Emery as her own separate estate, in her own right and to her sole and separate use, free from his interference and control, and to her heirs and assigns forever."

June 1, 1885, she executed and gave to him an agreement as follows: "I, Martha J. Emery, wife of Asa K. Emery, agree that I will not instigate or aid in any way or manner any proceedings for the purpose of procuring a guardian to be placed over the person or goods of said Emery, nor for the purpose of sending him to any asylum, and I further promise and agree that I will not contract any debts against him nor on his credit, in any way or manner, on or after this date, June 1, 1885."

June 2, 1885, the money was paid to her, and she gave a receipt as follows: "June 2, 1885. Received of Asa K. Emery, by the hand of L. B. Clough, Esq., six thousand dollars in settlement of property matters between Asa K. Emery and Martha J. Emery, in pursuance of agreement between them dated April 29, 1885." Upon the payment of the money she left his house.

In May, 1885, Asa K. deeded the real estate to A. C. Wallace, to hold the same in trust for the benefit of the grantor and to convey it at his request. Martha J. joined in this deed, releasing dower and homestead. In January, 1891, Wallace, upon request of Asa K., conveyed the real estate to Elizabeth J. Newton, the appellant, and she executed a declaration that she held the same in trust "for the use and benefit of said Asa K. Emery during the term of his natural life; that, upon notice to me in writing from said Asa K. Emery in his lifetime, I will convey, by quitclaim deed, all my interest and title in said premises to him, the said Asa K. Emery, or any person or persons he may thereby request, and upon his decease to such person or persons as he may by will direct, to them and their heirs and assigns forever."

In the fall of 1885 Martha J. returned to her husband's house and lived there until February, 1887, when she again left, and never returned. They had no children. Asa K. died May 27, 1894, intestate. His administrator filed an inventory showing personal property to the amount of $2,965.71, and no real estate.

His estate is solvent. In October, 1894, the judge of probate, upon petition of the widow, decreed her an allowance of $500 out of the personal estate. Elizabeth J. Newton, one of the heirs of Asa K., appealed from this decree. Martha J. died August 2, 1895, testate, and the appeal has since been defended against by her executor. The inventory of her estate shows personal property to the amount of $7,825.56.

*Cyrus A. Sulloway* and *Elijah M. Topliff*, for the plaintiff.

*Burnham, Brown & Warren, George W. Prescott*, and *John H. Riedell*, for the defendant.

WALLACE, J. Did Martha J. Emery, by the agreement of April 29, 1885, release her right to such share of the personal estate of her husband as she would be entitled to at his death, including a distributive share and such reasonable allowance as the judge of probate might make her? It appears that at the time of her marriage she had property of the value of about $1,100, and her husband of about $2,000; and from that time to the date of making the agreement they added to the same until their joint property was then worth about $15,000, consisting of personalty, which was in the possession of the husband, and real estate, the title to which was in his name. It also appears from the agreement itself that "certain disputes and controversies" had arisen between them "in regard to their respective interests" in this property.

The situation at the time the agreement was entered into, as disclosed from the surrounding circumstances and from the instrument itself, was the joint ownership by the husband and wife of property then in the husband's hands, and a disagreement as to the amount belonging to each. This controversy had reference to the respective interests which each party had in the property in the lifetime of the other, and to the portion that each should have upon the execution of the agreement. There is nothing to indicate that the controversy had any relation to the share which the survivor should take in the other's estate, or that, in making this agreement, they had that subject in mind.

The purpose for which the agreement was made clearly appears in the instrument itself. The language of the second clause, " Now, for the purpose of settling the same," refers to the controversy about the division of this property, which had been clearly set forth in the preceding clause. And the further language, " and of adjusting the rights of the respective parties therein and thereto, to the end that the said Martha J. Emery may receive her separate estate therein," shows that the parties

intended by this instrument to definitely fix the rights of each in this property and give to the wife her separate estate.

By the further terms of the instrument, she agreed to receive $6,000 "in full payment and satisfaction for all her right, title, interest, and separate estate in and to said real estate and personal property." And in consideration of that sum, she released "all right, title, interest, or claim in and to said real estate, and the balance of said personal property remaining after the payment of said $6,000 as aforesaid." And her husband, by the further terms of the writing, agreed to pay her that sum "for all her right, title, interest, and separate estate in and to said real estate and personal property," and further released "all right, title, interest, and claim in and to said $6,000," and agreed that she should hold the same "as her own separate estate, in her own right, and to her sole and separate use, free from his interference and control, and to her heirs and assigns forever."

The language thus employed was apt and proper to effect a division of their joint property, and to provide that the wife's portion should be held as her separate estate, free from the control of her husband. There is no language in the instrument which indicates that the parties intended that the wife should release any claim she might have to the personal estate of her husband in case she survived him. If that had been the intention of the parties, they would doubtless have used proper language to express it. There is nothing in the agreement which can be held to be a bar to her claim for such share of the personal estate of her deceased husband as a widow is entitled to by law.

The terms of the agreement did not provide that the parties should live separate, and that the parties did not so understand it is indicated by the fact that they lived together a year and a half afterward. The mere fact that they lived separate a few years before the husband's death, in the absence of anything to show that it was due to the fault of the wife or was even desired by her, is not of itself sufficient to bar her claim for an allowance, or to show that the decree of the probate court granting her one ought on that account to be reversed. *Slack* v. *Slack*, 123 Mass. 443.

The remaining question, whether the allowance was reasonable or not, is a question for the trial term.

*Case discharged.*

PEASLEE, J., did not sit : the others concurred.