JANE ROUSE V. J. W. ROUSE *et al.*

No. 15,141.   (91 Pac. 45.)

SYLLABUS BY THE COURT.

HUSBAND AND WIFE—*Descents and Distributions—Antenuptial Agreement.*   An antenuptial agreement provided that the property ·owned by either party should, after the marriage, remain the separate and distinct property of such owner, and neither should have or exercise any right, title or estate in the property of the other, and each might at his or her option dispose of such property by will or otherwise, except that the husband should not during the lifetime of the wife so dispose of his property as to jeopardize or render nugatory a subsequent provision for her benefit, by which he agreed to furnish her proper and comfortable support so long as they lived together as husband and wife, or, in case she survived him, ·so long as she remained his widow.   After living together thirty years the husband died intestate.   *Held,* that the agreement did not exclude the widow from her right of inheritance in the husband's property.

Error from Miami district court; WINFIELD H. SHELDON, judge.   Opinion filed July 5, 1907.   Reversed.

*Alpheus Lane, W. J. Costigan,* and *Benson & Harris,* for plaintiff in error.

*Frank M. Sheridan,* for defendants in error.

The opinion of the court was delivered by

PORTER, J.: This suit was for partition of lands, and the construction of an antenuptial contract is the only question involved.

George W. Rouse died intestate in Miami county August 9, 1903, at the age of eighty-two years.   He owned about two hundred acres of land at his death, and left surviving him, in addition to several children of a former marriage, his widow, Jane Rouse,· and one child by her.   The controversy is between the children of the first marriage and Jane Rouse, the widow.   He

married Jane Rouse in 1874. Immediately before the marriage they entered into the following contract:

"Know all men that we, G. W. Rouse, of Miami county, state of Kansas, and Jane Sewel, of the same place, in consideration of mutual promises of marriage between made, have this day agreed, and we do by these presents agree, that in case said marriage takes place, that the property real and personal now owned by either, or which may hereafter be acquired by either, shall after the solemnization of said marriage be and remain the separate and distinct property of such owner, and neither shall have or exercise any rights, title or estate in the property of the other, and each may at his or her option dispose of, by will or otherwise, all or any part of his or her property in such manner as may to him or her seem fit, excepting, however, that said G. W. Rouse shall not during the lifetime of said Jane Sewel so dispose of his property as to jeopardize or render nugatory the provisions hereinafter mentioned, viz.:

"It is agreed and provided that said G. W. Rouse shall and will furnish to said Jane Sewel a good, proper and comfortable support out of his said estate, so long as they shall live together as man and wife, and also, that in case said Jane Sewel shall survive said G. W. Rouse, then and in that case said Jane Sewel shall have a proper and sufficient support according to her station in life out of the estate of the said G. W. Rouse during the term of her natural life, or so long as she remains the widow of said G. W. Rouse.

"Witness our hands and seals this 23d day of June, A. D 1874.                    G. W. ROUSE   (Seal).
                                 JANE SEWEL   (Seal)."

The district court held that by the terms of the agreement Jane Rouse took no interest in any of the real estate. Of this holding Mrs. Rouse complains.

It seems manifest that the first provision in the agreement would not be sufficient of itself to exclude the wife as an heir. A similar provision, in *Kistler v. Ernst,* 60 Kan. 243, 56 Pac. 18, was held not to exclude the husband from his rights of inheritance. In that case the language of the antenuptial agreement provided that the wife "shall have, hold, keep and retain

all of the property which she now has or may hereafter acquire, whether real, personal, or mixed, and wheresoever situate, as her sole, exclusive and absolute property, for her separate use and benefit, free from all claims, rights and interest of her said intended husband, John Ernst, with the right on the part of the said Henrietta to, by gift, sale, devise, or will, dispose of the same to such persons as she may desire, the said John Ernst hereby consenting to such disposition of all such property in all respects as if the same should be by will devised by said Henrietta after such marriage and the consent of said John Ernst indorsed in writing thereon."    (Page 245.)

In the present case the agreement, looking alone at the first provision, is that the property of each shall, after the marriage, be and remain the separate and distinct property of such owner, who is to have the right at his or her option to dispose of the same, by will or otherwise; and neither shall have nor exercise any right, title or interest in the property of the other. So far, the agreements are substantially alike. It is contended, however, that a construction must be given which would in some way alter the rights of the parties as they existed; that otherwise the agreement is rendered inoperative. The same contention was urged in *Kistler v. Ernst, supra,* where it was said in the opinion:

"The contract seems to have followed the law and conferred no greater rights on either party than were vouchsafed by the statute, with these limitations: Any conveyance, gift or sale of the property of one during coverture could not be challenged as being in fraud of the rights of the other. The antenuptial agreement worked an estoppel on both parties and silenced all complaint of one against alienation by the other, fraudulent or otherwise. It also gave to each the right to convey his or her real estate by separate deed and pass a merchantable title. It gave the power to bequeath and devise all the property of each by separate will. Thus the contract performed some service in respect to the property of both parties during cover-

ture, and its terms, to the extent stated, modified and
changed rights secured by the statute." (Page 246.)

In *Busenbark v. Busenbark*, 33 Kan. 572, 7 Pac. 245,
speaking of the interest which the wife has in the
husband's real estate, it was said:

"It is true that this interest in the real estate of the
husband is inchoate and uncertain, yet, according to
the authorities, it possesses the element of property.
It is an interest and right of which she can be devested
only by her consent, or crime, or her dying before her
husband. It is an interest which may be, in connec-
tion with the husband, the subject of contract and bar-
gain, and is by many of the authorities denominated
a contingent but valuable interest. It has been de-
cided by this court that the wife has an estate in
the homestead occupied by herself and husband, al-
though the title to the same be in the husband, and that
it is such a present and existing estate that it will be
protected by the courts. (*Helm v. Helm*, 11 Kan. 19;
*Jenness v. Cutler*, 12 Kan. 500.)" (Page 577.)

The main question, however, is whether the subse-
quent clause of the contract guaranteeing to the wife
a sufficient support from the husband's property after
his death, in the event she survived him, distinguishes
this from *Kistler v. Ernst, supra*, and compels a differ-
ent construction to be placed upon the agreement.
Plaintiff in error contends that this clause is simply a
further provision for the benefit of Mrs. Rouse, by
which the husband agrees that, although he has the
right without her consent to dispose by deed or will
of all his property during her lifetime, he will not so
far dispose of it as to prejudice her rights to have out
of his estate a sufficient support for the remainder of
her life in case she survives him. It is argued that
without this provision he might have conveyed by deed
or devise every dollar he possessed, and, dying before
her, leave her without any means of support, and the
contention is that this safeguard of the wife's right
in any event to sufficient support has been employed
by the trial court as a means to destroy her inherit-

ance; that by a fair construction of both provisions there is no implication even that she is to be deprived of her right to inherit from the husband. Manifestly, the court construed this clause, taken with the first, to constitute a substantive provision for the wife which excluded her from any other interest in his property after his death.

In *Hart, &c. v. Soward,* 53 Ky. 301, the contract provided that the wife "shall hold and possess, for her own separate and exclusive use and benefit, all the estate, real, personal, and mixed, now owned and possessed by her, and the future rents, issues, and profits thereof, free from the control or disposition of the said Alfred Soward—it being intended that the said Margaretta Gorsuch shall hold the said property as her separate estate, and in the same manner as if she were sole and unmarried, she hereby retaining authority and power to dispose of the same in such manner as she may choose in her lifetime, by sale and conveyance, or by last will and testament." (Page 302.) She died intestate, and the husband was given a husband's interest in all her property notwithstanding the agreement. It was said:

"If this agreement contained any provisions on the subject of the right of succession to the property, after the death of the wife, this question could not arise; but, as it only secured to the wife the right to control and dispose of the property during the coverture as if she were unmarried, and as she made no disposition of it to take effect after her death, the agreement, having accomplished the object of its existence, and the purpose contemplated by the parties in its execution, became, by her death, inoperative, according to its own nature, and left her estate to the disposition of the law." (Page 302.)

It will be noticed that by the agreement in that case the wife retained the power to dispose of her property "as she may choose in her lifetime." The words "in her lifetime" are not used in the agreement we are considering, nor was the same or similar language

used in the. agreement in *Kistler v. Ernst,* 60 Kan. 243, 56 Pac. 18. Their absence is not important, for if either husband or wife desired to dispose of. property by deed, gift or devise it·would necessarily ·be done during his or her lifetime, though effect might not be given until after death. As said by Mr. Justice Smith, in *Kistler v. Ernst*:

"There is no express agreement in the contract which excludes the husband from a right of inheritance on the death of the wife. She had the right to devise her property to whom she pleased, and the consent of her husband was given in advance. Under the position taken by plaintiff in error, a devise by will to the husband was necessary on the part of the wife, should she have desired that he take her property at her death. The law obviated all necessity for a will in such case, as we construe the contract. There is nothing in the contract that convinces us that Ernst, by the agreement, surrendered or released his right of inheritance as the survivor of his wife. . . . The counsel for plaintiff in error, by a refinement of reasoning, seeks' to read into the agreement provisions founded on implications and probabilities as to the intention of the parties, which cannot be justified under the language of the instrument. The wife had the right ·of disposition, which she did not see fit to exercise. This failure to make disposition might have been induced by the affection she bore for her husband, knowing that upon her death the law would place her property in his hands as effectually as if a formal will had been made." (Pages 247, 248.)

This contract is not free from doubt, but it is open to the construction contended for by plaintiff in error, and could well‚ mean that by this subsequent provision nothing more was contemplated than to guarantee to the wife that, in case the husband saw fit to exercise the right to dispose of his entire estate, he would not do so without making ample provision for her support during the time she should survive him and remain his widow. It is by no means· clear to us that the intention was that she should not inherit a wife's interest

in all property of his which he did not see fit to dispose of separately by deed or will during his life.

We have frequently held that agreements of this character should be liberally construed to carry into effect the intention and purpose of the parties; nevertheless, their terms are not to be extended by mere implication to exclude the right of the survivor to take by inheritance. The reasons are manifest. If such be the intent of the parties, it can be readily expressed in appropriate language or in words from which the intention is necessarily implied. Nor are we impressed with the claim that the circumstances surrounding the parties to this agreement at the time it was entered into and the relations which existed between them are of a nature from which a different purpose may be implied or are such as to invoke a strained construction in favor of the heirs. It is true that at the time the agreement was made the husband possessed most of the land and the wife brought but little in the way of property or means to the marriage, and was at the time past middle life. However, they lived together for more than thirty years, during which she doubtless contributed her share to his further accumulation of property. Moreover, he had three minor children at the time of this marriage, and the evidence warrants the inference that Jane Rouse became a mother to them. The circumstances, it will be observed, are not similar to a case where an old man, in his declining years, having property of his own, enters the marriage relation with a woman younger than himself, neither expecting that the relation will extend beyond a few years at most, and a contract is made which the circumstances assist in construing as intended to provide that the wife at his death shall take a certain compensation in lieu of any interest the law might give her in his estate.

The agreement might have provided that in case the wife survived the husband she should take no share in his estate by inheritance, but the provision that the

husband should have the option to dispose of his prop-
erty by will or otherwise cannot by implication be said
to mean that, in the event he failed to exercise such
option, the laws of inheritance should be set aside and
the wife be left in the same situation as though he had
exercised the option. Notwithstanding the contract
he could have devised all of his property to his wife.
There was no will, no disposition by him in his life-
time, although she had agreed that he might make a
will or other disposition. This is a contest between his
widow and the other heirs. These heirs are not men-
tioned in the agreement and must take under the laws
of descent—the same laws which give her one-half of
the husband's property where he dies intestate. The
limitation of the husband's power of disposition in the
subsequent clause cannot be extended by implication
beyond the plain import of its terms.

While we are not prepared to say that an express
provision must always appear in order to deprive the
survivor of the rights of inheritance, there are author-
ities which go to that extent. (See *Stewart v. Stew-
art,* 7 Johns. Ch. [N. Y.] *229, cited and relied upon
in *Kistler v. Ernst, supra.*) In the former case Chan-
cellor Kent said:

"The court cannot take away the right of the hus-
band to the personal estate of his wife, when it is not
taken away by the settlement, or by the exercise of
the power of appointment under it. When the settle-
ment makes no disposition of the property, in the event
of the wife's death, and provides only for her dominion
over it during coverture, the right of the husband, as
survivor, is a fixed and stable right, over which the
court has no control, and of which he cannot be de-
vested. The settlement cannot be extended, by con-
struction, beyond the just and fair import of its pro-
visions; and, clearly, the court cannot create a settle-
ment, or a disposition of property, in violation of the
*jus mariti,* when none has been made by the party."
(Page *247.)

(See, also, *Jones and White v. Brown,* 1 Md. Ch.
191; *Talbot v. Calvert,* 24 Pa. St. 327; *Brown's Adm'rs,*

Meistrell v. Ellis County.

*v. Brown's Adm'rs,* 25 Tenn. 127; *Sutherland et al. v. Sutherland et al.,* 69 Ill. 481; *Christy v. Marmon,* 163 Ill. 225, 43 N. E. 150.)

In commenting upon an antenuptial agreement the supreme court of Iowa, in *In re Est. of Peet,* 79 Iowa, 185, 44 N. W. 354, said:

"It must be understood that contracts designed to devest the wife of the benefits of the statutes in her favor, after the death of her husband, . . . must not be of doubtful interpretation, but specific and certain as to such intent." (Page 188.)

It follows from what has been said that the judgment must be reversed and remanded for further proceedings in accordance with these views.