## GIRARD et al. v. GIRARD.

### SYLLABUS BY THE COURT

1.   Upon the death of a married man who dies intestate, with a surviving widow and without issue, his entire estate descends to and becomes her property.

2.   If such an intestate leaves no wife, the portion of his estate which would have gone to her ascends to and becomes vested in his parents; if only one parent survives such intestate, the entire estate vests in such surviving parent.

3.   If both parents are dead, the portion of the estate which would have gone to them had they been living shall be disposed of in the same manner as if they had survived the intestate and had died in the full possession and ownership of such estate.

4.   In the construction of contracts, where it is sought to deprive either husband or wife of property rights growing out of the marital relation, courts will go no further than the language of the contract extends, and will not deprive either spouse of such rights unless there is a clear and unmistakable intention to barter them away.

5.   Where a separation contract between husband and wife does not, by express terms or by necessary implication, provide that she waives, releases, relinquishes, and renounces her right to inherit from him upon his death, intestate and without issue, such right still remains with and may be enforced by such surviving widow.

Appeal from District Court, Bernalillo County, Hickey, Judge.

Suit by Augustine J. Girard, individually and as administratrix of the estate of Joseph F. Girard. deceased, against Margaret Morrison Girard.    Judgment for plaintiff, and defendant appeals.    Reversed and remanded with directions.

### STATEMENT OF FACTS BY THE COURT

On July 14, 1906, Joseph F. Girard, who was then a widower, and Margaret Morrison, who was then a widow, were married at Albuquerque, N. M., and immediately thereafter began living together as husband and wife.    They continued to so live until September 8, 1917, when, as the result of divers disputes and un-

happy differences which had arisen between them, they ceased to live together and permanently separated. On that day they entered into a written contract of separation, which, after providing that the husband released all claims to the property then owned or afterwards acquired by the wife, contained the following pertinent provisions.

"And, further, that the said party of the first part has at the time of the signing of this agreement paid to his said wife the sum of four thousand ($4,000.00) dollars, receipt of which is hereby acknowledge by the said second party, and which the said party of the second part does hereby take in full satisfaction of her support and maintenance and all alimony whatever, and the said party of the second part in consideration of the sum of one dollar to her in hand paid, the receipt of which is hereby acknowledged and confessed, does hereby agree to and with her said husband, the party of the first part, that she will, and hereby does by this agreement, release all right, title, or interest of any kind whatsoever, in law or in equity, which she may now have or possess, to any and all property of any kind or description, real or personal, now owned or hereafter acquired by the said party of the first part during his natural life."

On September 14, 1917, the said Joseph F. Girard executed his last will and testament, by the terms of which he gave, bequeathed, and devised unto his said wife the sum of $1; he likewise gave an adopted son of his deceased son the sum of $1; and he further gave to his stepson, Charles Girard, the sum of $2,000. He then gave, bequeathed, and devised unto his married daughter, Julia Emily Ward, the rest, residue, and remainder of his estate, and appointed her executrix of such will, with the added provision that no bond be required of her.

Julia Emily Ward died on September 26, 1921, without issue, and on November 9, 1921, Joseph F. Girard died at Albuquerque, N. M., leaving no issue of either marriage. Afterwards and on December 22, 1921, by an order duly and regularly made by the probate court of Bernalillo county, the above-mentioned will was regularly admitted to probate, and the appellee Augustine J. Girard, who is a niece of the deceased, was duly ap-

pointed administratrix with the will annexed, and let-
ters of administration accordingly issued. The said
Augustine J. Girard, acting both in her individual and
official capacity, instituted this suit against all of the
persons whom she claimed to be the heirs at law of the
deceased, setting forth the blood relationship or kinship
which each bore to him, together with an allegation of
the fractional part of the estate owned by each of them,
respectively. The will was fully pleaded, with the sev-
eral bequests therein contained. as well as the death of
Julia Emily Ward prior to that of Joseph F. Girard,
and that, by virtue of said will, the appellant was en-
titled to only $1 from the assets of the estate. Appellee
prayed that the heirship of all the defendants be deter-.
mined by the court; their respective interests in the
estate be adjudicated; that such estate be partitioned,
and to that end that commissioners be appointed.

The appellant, Margaret Morrison Girard, answered
denying that she owned and was entitled to only $1 of
said estate, and, by cross-complaint, pleaded that she
was the wife and surviving widow of the deceased; that,
by reason of the predecease of Julia Emily Ward, the
general residuary bequest in her favor contained in said
will had lapsed; that her (appellant's) husband died
without issue, and that by reason thereof she inherited
and became the owner of said estate in its entirety,
whether it be community or separate property. She
further pleaded the separation agreement referred to.
but contended that by its terms she did not waive, re-
lease, relinquish or renounce her right to so inherit from
her said husband. She further pleaded at length the
expenditure of certain community money belonging to
herself and husband in the improvement of the prop-
erties involved, and sought to tinge them as community
property by reason thereof.

The appellee by answer to such cross-complaint ad-
mitted the marriage of the appellant to the deceased,
that she is his surviving widow, as well as the execu-

tion of the separation agreement; but contended that, by the express terms of the contract, the appellant had waived, released, and relinquished her right to inherit from her said husband, but, if. not expressly so provided, then it was the agreement. intention, and understanding of the parties at the time they entered into the contract, and they intended to so provide. By an amendment duly made, the appellee further prayed that if the court should determine the contract did not provide as the parties intended and agreed, that it be reformed to conform to their intention, understanding, and agreement at the time it was entered into.

The trial court found that all of the property involved was the separate property of the deceased husband; he made no finding with reference to the expenditure of community money in the improvement thereof; he found that the separation agreement was entered into; and concluded, as a matter of law, that by its terms the appellant had released and relinquished all her right to inherit the estate upon the death of her husband. Decree was rendered determining the heirship of the several defendants, adjudicating their respective interests in the estate, and awarding to the appellant the sum of $1 as provided in the will. From this decree she has appealed.

Rodey & Rodey, of Albuquerque for appellant.

The statutes that may be considered of real importance in this case are: Sections 1845, 2750 and 2782 of the 1915 Code.

It is not at all certain that a wife in New Mexico can, under 2750 of the Code, in the light of the limitations put upon the action of spouses by section 2782, sell to her husband her rights as his heir, because it is often but the merest expectancy, and may never materialize if he survives her, or wills away his entire property. Stephenson v. Osborne, 90 Am. Dec. 362. It is well to remember that when people are married their

relation becomes a status, and their rights are fixed by law. Foote v. Nickerson, 54 L. R. A. 563.

An agreement to separate does not necessarily affect the rights of the one as the surviving spouse in the estate of the other.    9R. C. L. § 351, p. 531 and citations.  See notes to case of Spears v. Spaw, 25 L. R. A. (N. S.) pp. 439-42; in re Taylor, 5 Ann. Cas. 227.

Counsel for appellant make a special request that this Supreme Court read Jones v. Lamont, 118 Cal. 499; 62 Am. St. Reps. 251, in which the contract entered into resembled the one in the case at bar to an unusual extent.    See also a very extensive essay on separation agreements in the case of Baum v. Baum, 109 Wis. 47, 85 N. W. 122, and Foote v. Nickerson, supra, 54 L. R. A. 554.

If any presumptions are to be indulged, it should be presumed that it was Mr. Girard's desire that his estate should go where the law in such case put it, to his wife. See 28 R. C. L., p. 336, § 327.

Beals v. Ares, 25 N. M. 459, virtually, as counsel look at it, constitutes husband and wife in New Mexico as partners.    This court ought never to forget that, notwithstanding the civil law ideas surrounding our community property rights in this state, still the actual rights are common law and statutory, as held in that case.    See, also, Cooke v. Bremond, 27 Tex. 457; 5 R. C. L., p. 838, § 17; 5 R. C. L., p. 844, §24; 21 Cyc., p. 1158, subhead "E"; §§2763 and 2764 Code 1915; 9 R. C. L. 559; 8 R. C. L. 402, § 14.

It is always indelicate for an attorney to appear against a former client as a witness in a suit growing out of the matter he was employed in. It is urged that that testimony is practically privileged and never ought to have been admitted in the case.  40 Cyc. 2361, § 4 and notes.  See, also, Van Syckel v. Ezquiaga, 4 P. R. Fed. 222; Will v. Tornabells, 3 P. R. Fed. 125, 217 U. S. 47; 28 R. C. L. 548, § 138; 2 R. C. L. 975, § 53.

That the parties after living beside each other and visiting each other and having full marital relations with each other for three years or so after the separation agreement, then for a time ceased such communicating with each other and relations with each other while appellant went to New Orleans, does not in any manner, under the authorities, vitiate or annul any reconciliation however short or long it might have been, that occurred previous to that. All authorities sustain this view. See supra and also 9 R. C. L., §455, p. 535.

The case of McCall v. Hampton, 98 Ky. 166, 56 Am. St. Reps. 335, shows that under the law of that state a naked possibility or expectancy was not the subject of sale or assignment and such contract was not enforcible either at law or in equity upon the ancestor's death. The case of In Re Taylor (Indian Territory), 5 Am. Cas. 226, shows that a release executed by a wife to her husband is ineffectual to extinguish her right of dower in his real property under the law applicable in that jurisdiction.

Downer & Keleher, of Albuquerque, and F. M. Downer Jr., of Denver, Colo., for appellee.

Separation agreements are specifically authorized by the law of New Mexico without qualification excepting, of course, a contract which would alter the parties' status of husband and wife. The law particularly specifies that husband and wife may change their relations as to their property. Sections 2750 and 2782 of the 1915 Code.

The general policy of the law has changed somewhat in modern times and while it is true that at the early common law separation agreements were regarded as void as against public policy, the modern law is inclined to look upon such contracts as not only entirely lawful but to be commended when their effect is to avoid trouble and unhappiness for the parties interested. As to legality of agreements for separation see generally. 13 C. J., p. 465; 9 R. C. L., p. 524, § 344; also Daniels v. Benedict, 97 Fed. 368.

It is true that a separation agreement need not necessarily affect the rights of a surviving spouse in the estate of the other and some such instances have been cited by opposing counsel. However, there is no doubt but that by a proper agreement either spouse may relinquish his or her interest both present or prospective in the estate of the other. 9 R. C. L., § 351, p. 531; Daniels v. Benedict, 97 Fed. 367; Re Davis Estate, 106 Cal. 453; In Re Edelman's Estate (Cal.), 82 Pac. 962. The Davis case, supra, is strikingly similar to the one on trial.

It is clear that the evidence of reconciliation was inadmissible under the pleadings as framed. This leaves only the question as to whether the court should have permitted a trial amendment. Such an amendment would have changed the theory of the entire case and the grounds of appellant's defense and cross-complaint and under all authorities was for such reason not permissible. Bremen M. & M. Co. v. Bremen, 13 N. M. 111; Candelaria v. Miera, 18 N. M. 107; Loretto Literary Society v. Garcia, 18 N. M. 318; Moore v. Western Meat Company, 16 N. M. 107.

We take it that there can be no dispute about the general rule as to privileged communications between attorney and client and, of course, the evidence of John Venable was intended to be, and, as the record fairly shows, was brought within the exception to the rule. A general statement of the exceptions to the rule prohibiting an attorney from testifying may be found in Vol. 28 R. C. L., §§ 150, 151 and 157. See, also, Steketee v. Newkirk, 173 Mich. 223; Dominguez v. Citizens Tr. Co., 56 So. 682; Brogan v. Porter, 140 S. W. 1007; Lenahan v. Casey, 128 Pac. 601; In Re Ruos, 159 Fed. 252; York v. United States, 324 Fed. 88; Kissack v. Bourke, 132 Ill. App. 360; Rester v. Powell, 45 So. 372; People v. Andre, 117 N. W. 55; Smith v. Guerre, 159 S. W. 417.

Inasmuch as the Bill of Exceptions is concededly in-

complete this court should not review the findings of fact assigned as error. There is an abundance of authority to the effect that the appellate court will not disturb findings of fact in the absence of a complete record. 3 Cyc., p. 172 and cases cited.

BRATTON, J. (after stating the facts as above).

[**1, 3**] The conclusion which we have reached renders it necessary to consider but one question in the case, although others are discussed by counsel in their briefs. It is provided by statute that the entire estate of a married man who dies intestate, with a surviving wife and without issue, descends to and becomes the property of the wife. If he leaves no wife, it becomes the property of his parents, and if only one parent is living, the portion which would have gone to the deceased parent vests in the surviving parent.

"If the intestate leaves no issue, the whole of 'his estate shall go to his wife; if he leaves no wife, the portion which would have gone to her shall go to his parents. If one of his parents be dead, the portion which would have gone to such deceased parent, shall go to the surviving parent." Section 1845, Code 1915.

And it is further provided by statute that, if both parents are dead, the portion of the estate which would have ascended to them, under the terms of the statute just quoted, shall be disposed of in the same manner as if they had outlived the intestate and had died in possession and ownership of such property.

"If both parents be dead, the portion which would have fallen to their share, by the above rule, shall be disposed of in the same manner as if they had outlived the intestate, and died in the possession and ownership of the portion thus falling to their share; and so on through the ascending ancestors and their issue." Section 1846, Code 1915.

The appellant is the surviving widow of the deceased, and, as such, contends that by virtue of the provisions contained in section 1845 of the Code she inherited the entire estate to the exclusion of all others. The appel-

lees are collateral heirs of the deceased; and contend that, by virtue of the separation agreement, the appellant waived, released, relinquished, and renounced her right of inheritance; and that they are therefore entitled to take the entire estate under the provisions of section 1846 of the Code.

That the appellant, as the surviving widow of the deceased, subject to the two bequests contained in the will, which have not lapsed, would take the entire estate, in the absence of the contract in question, is too plain for argument and is not open to debate. That the collateral heirs can inherit under the terms of the statute, to the exclusion of the surviving widow, only in the event she has waived, released, relinquished, and renounced her right so to do, is equally plain. And that Joseph F. Girard had the legal right, by will, to dispose of all or any part of his separate estate is well settled, so that the bequests of $1 to the adopted son of his deceased son, as well as the one of $2,000 to his stepson are valid, but the general residuary legacy in favor of his married daughter, Julia Emily Ward, lapsed upon her predecease without issue. The case then turns upon a construction of the contract in question.

[**4, 5**]   We set off to consider such contract with the well-established rule of construction in mind that, in instances of this kind, where it is sought to deprive either husband or wife of property rights growing out of the marital relation, courts will go no further than the language of the contract extends; they will not come to the aid of such contracts so as to deprive either spouse of such rights unless there is a clear and unmistakable intention to barter them away, and, to reach such a conclusion, the contract must not be of doubtful interpretation, but must, by express terms or by necessary implication, clearly so provide. 30 C. J. 646; Jones v. Lamont, 118 Cal. 499, 50 Pac. 766, 62 Am. St. Rep. 251; In re Peet's Estate, 79 Iowa 185, 44 N. W. 354; Baughman v. Baughman, 283 Ill. 55, 119 N. E. 49,

Ann. Cas. 1918E, 895; Richardson v. De Giverville, 107 Mo. 422, 17 S. W. 974, 28 Am. St. Rep. 426.

Necessary implication, in the sense that it is here used, means so strong a probability of intention that an intention to the contrary or otherwise than that imputed to appellant cannot be reasonably supposed.

We need not consume any time in considering whether or not the contract expressly provides that she waives this right. There is no such language used. Such right is not directly mentioned and no words referring to it can be anywhere found. No mention is made of the husband's "heirs," "executors." or others in that class. The terms "inheritance," or "right of inheritance." are entirely absent. We now turn to consider whether or not by the use of the language:

"Does hereby agree to and with her husband, the party of the first part, that she will and hereby does by this agreement, release all right, title or interest of any kind whatsoever, in law or in equity, which she may now have or possess, to any and all property of any kind or description, real or personal now owned by or hereafter acquired by the party of the first part, during his natural life,"

—it is to be held that she, by necessary implication, released and waived such right. In this connection it is shown by the record, without any dispute whatever, that considerable money belonging to the community of the said parties was spent in the improvement of the properties involved. It may have been their purpose that she should release and waive this right, and by the use of this language to exonerate such property from her claim as a member of the community. Again, the record shows that these parties had lived together as husband and wife in Albuquerque for 11 years, and they may have intended to remove any question concerning the right of the said Joseph F. Girard to convey said property without the joinder of his wife. They may have intended that they would so declare in this contract that no question or challenge would thereafter be raised by the commercial world with reference to the

validity or merchantability of any title passed by his deed without her joinder. They perhaps intended to declare to the world that she had no further rights in such property arising from the mere fact that she bore the relation of a wife to him. At least the contract is susceptible of such construction, and there is no such ambiguity about its language as to require parol evidence concerning the intention of the parties.

The right which she now asserts, namely, to inherit the whole of his estate, whether separate or community, depends upon three things. She must survive him; he must die intestate; and he must die without issue. That they considered all of these elements is not apparent from the face of the contract. If she had died before he did, no right to this property through her could be claimed. If he had disposed of it by will, which he had a legal right to do, she would have acquired no right whatever upon his death, or had he left issue of such marriage, her rights would be changed. These are all elements which the parties must have taken into consideration if we should determine that they intended by the contract to deprive her of such right. And we cannot say that they so considered or contemplated such contingencies, because the contract does not in clear terms so indicate. Again, if they had intended that she thereby waived her right to inherit, under the circumstances as they now exist, the easiest and most natural thing in the world would have been for them to have simply, plainly, and in apt language said so. This they did not do, and we cannot so construe the contract without adding to it, ingrafting upon it, or reading into it, things which the parties did not elect to contract upon. This is neither the practice nor the function of courts. From these considerations, we are driven to the conclusion that the appellant did not part with her right to inherit from her deceased husband, and that, upon his death, she became the owner of the entire estate, subject to his debts and the two bequests of $1 and $2.000, respectively. This is an original ques-

tion here, but we think our conclusion is supported by the weight of authority elsewhere expressed.

In Beard v. Beard, 22 W. Va. 130, the parties contemplated marriage, and, in a desire to adjust their property rights in advance thereof, entered into an antenuptial agreement, which contained this provision:

"And that they relinquish all claim, title, or interest in each other's property that might vest in them under the law by reason of their expected marriage."

The wife died without having made a will, and the husband claimed to inherit her separate estate. It was contended by certain of her collateral heirs that he had, in the execution of the contract, waived such right. The court held otherwise, and in part said:

"That he, by this marriage settlement, agreed that she should have a separate estate in all her property and might dispose of it in any manner she pleassd, is clear. But is there anything in this marriage settlement, which shows clearly that he intended and agreed expressly or by necessary implication that he would surrender and release any interest he might have in her separate personal estate as 'her administrator and sole distributee, if she should die childless and without disposing of such separate personal estate? It seems to me that there is not. There is but one clause in this marriage settlement, which could possibly be so interpreted, that is, the last clause, by which 'he relinquishes all claim. title, or interest in her property that might vest in him under the law by reason of the expected marriage.' What is the natural meaning of this language. It seems to me that the parties had in contemplation the well-known law, that upon the consummation of the marriage the husband became entitled to all the wife's personal property as the immediate and direct consequence of the marriage; and that Beard thereby intended and did release all the claim, title and interest, which would have been his immediately on the consummation of the marriage; and that this clause was intended only to make clear the provisions before inserted in the agreement, that her property both real and personal should belong to her as separate property under her control, which she could sell or dispose of in any manner she pleased. To remove any possible obstacle to her so holding and disposing of her property, he agreed in this last clause to release the interest in it, whicn he would acquire by the marriage. But there is nothing in this clause or in any part of the agreement which indicates that the parties contemplated her dying childless without disposing of her property. If they were not contemplating such a contingency, there could be no express agreement and no

agreement necessarily implied, that in such a contingency he would release his rights as survivor or sole distributee of his wife."

The facts disclosed in the case of Hinkle v. Hinkle, 34 W. Va. 142, 11 S. E. 993, are that an antenuptial agreement was entered into, which contained the following provisions:

"The said Hannah H. Ketterman hereby bargains and agrees with the said Michael H. Hinkle that she (the said Hannah H. Ketterman) hereby agrees to waive and relinquish forever all such right, title, or intertst in and to any part of the estate, both personal and real, or the proceeds of the sales of either or both of which the said Michael H. Hinkle is now or may hereafter come in possession or acquire. * * * She (the said Hannah H. Ketterman) further agrees and binds herself never to claim or demand at law, or otherwise, as she (the said Hannah H. Ketterman) would acquire and be entitled to in the estate of the said Michael H. Hinkle after intermarriage with him (the said Michael H. Hinkle) any part of his (the said Michael H. Hinkle's) estate or property by reason of the solemnization of marriage between us (the said Michael H. Hinkle and the said Hannah H. Ketterman). * * * It is further agreed and expressly * * * by and between us (the said M. H. Hinkle and the said Hannah H. Ketterman) that she (the said Hannah H. Ketterman) shall never in the future acquire any property, rights, interests, or titles in or to any part of the estate of the said Michael H. Hinkle further than he (the said Michael H. Hinkle) may convey to her (the said Hannah H. Ketterman) by deed of gift or by will."

After the death of the husband, the wife asserted her right of dower in his estate, and filed her bill to establish such right. The defendants contended that by the terms of such agreement she had parted with that right. The court held otherwise, basing its decision upon the fact that no such intention was either expressly or by necessary implication shown in the agreement.

The Supreme Court of Kansas in Kistler v. Ernst, 60 Kan. 243, 50 Pac. 18, had before it a case where a widower and widow, in contemplation of marriage, entered into an antenuptial agreement, which contained the following provision:

"And that said Henrietta Juencke shall have, hold. keep

and retain all of the property which she now has or may hereafter acquire, whether real, personal, or mixed, and wheresoever situate, as her sole, exclusive and absolute property, for her separate use and benefit, free from all claims, rights and interests of her said intended husband, John Ernst, with the right on the part of the said Henrietta to, by gift, sale, devise or will, dispose of the same to such persons as she may desire, the said John Ernst hereby consenting to such disposition of all such property in all respects as if the same should be by will devised by said Henrietta after such marriage and the consent of said John Ernst indorsed in writing thereon."

The wife died intestate, and the husband claimed the right to inherit the entire estate. It was held by the court that the contract followed the law and conferred no greater rights upon either party than were given them by statute. It further held that the husband was not precluded from inheriting the estate, as no express provision to that effect was contained in the contract, nor one from which such an intention must be necessarily implied. That court thus well expressed the rule which we have in mind and are endeavoring to develop:

"The contract seems to have followed the law and conferred no greater rights on either party than were vouchsafed by the statute, with these limitations: Any conveyance, gift or sale of the property of one during coverture could not be challenged as being in fraud of the rights of the other. * * * It also gave to each the right to convey his or her real estate by separate deed and pass a merchantable title. It gave the power to bequeath and devise all the property of each by separate will. Thus the contract performed some service in respect to the property of both parties during coverture, and its terms, to the extent stated, modified and changed rights secured by the statute. The wife, Henrietta, reserved the 'right, by gift, sale, devise, or will, to dispose of the same (her property owned at the time of marriage or acquired afterwards) to such persons as she may desire, the said John Ernst hereby consenting to such disposition of all such property in all respects as if the same should be by will devised by said Henrietta after such marriage and the consent of the said John Ernst indorsed in writing thereon.'

"There is no express agreement in the contract which excludes the husband from a right of inheritance on the death of the wife. She had the right to devise her property to whom she pleased, and the consent of her husband was given in advance. Under the position taken by plaintiff in error, a devise by will to the husband was necessary on the part of the wife, should she have desired that he take her property

at her death. The law obviated all necessity for a will in such case, as we construe the contract. There is nothing in the contract that convinces us that Ernst, by the agreement, surrendered or released his right of inheritance as the survivor of his wife. In the case of Stewart v. Stewart, 7 Johns. Ch. 229, in commenting on the construction to be given to an antenuptial contract, it was said by Chancellor Kent:

" 'I believe it has been the invariable practice, and that the uniform course of the precedents will show it, that when it is intended in a marriage settlement to exclude the right of the husband to her personal property, in the event of his surviving her, and in default of her appointment, an express provision to that effect is inserted in the deed.' Bailey v. Wright, 18 Ves. 49; Donnington v. Mitchell, 1 Green's Ch. (N. J.) 243; Brown v. Alden, 14 B. Mon. 141."

The rule so declared was followed by the Supreme Court of Kansas in the later case of Rouse v. Rouse, 76 Kan. 311, 91 Pac. 45, where the parties entered into an antenuptial agreement in the following language:

"Know all men that we, G. W. Rouse, of Miami county, state of Kansas, and Jane Sewel, of the same place, in consideration of mutual promises of marriage between made. have this day agreed and we do by these presents agree, that in case said marriage takes place, that the property real and personal now owned by either,   *   *   *   shall after the solemnization of said marriage, be and remain the separate and distinct property of such owner, and neither shall have or exercise any rights, title or estate in the property of the other, and each may at his or her option, dispose of by will or otherwise, all or any part of his or her property in such manner as may to him or her seem fit, excepting, however, that said G. W. Rouse shall not during the lifetime of said Jane Sewel so dispose of his property as to jeopardize or render nugatory the provisions hereinafter mentioned, viz.: It is agreed and provided that said G. W. Rouse shall and will furnish to said Jane Sewel a good, proper and comfortable support out of his said estate, so long as they shall live together as man and wife, and also, that in case said Jane Sewel shall survive said G. W. Rouse then and in that case said Jane Sewell shall have a proper and sufficient support according to her station in life out of the estate of the said G. W. Rouse during the term of her natural life, or so long as she remains the widow of said G. W. Rouse."

The court in that case said:

"This contract is not free from doubt, but it is open to the construction contended for by plaintiff in error, and could well mean that by this subsequent provision nothing more was contemplated than to guarantee to the wife that, in case the

husband saw fit to exercise the right to dispose of his entire estate he would not do so without making ample provision for her support during the time she should survive him and remain his widow. It is by no means clear to us that the intention was that she should not inherit a wife's interest in all property of his which he did not see fit to dispose of separately by deed or will during his life.

"We have frequently held that agreements of this character should be liberally construed to carry into effect the intention and purpose of the parties; nevertheless, their terms are not to be extended by mere implication to exclude the right of the survivor to take by inheritance. The reasons are manifest. If such be the intent of the parties, it can be readily expressed in appropriate language or in words from which the intention is necessarily implied."

A case where the facts were practically identical with those involved here is Smith v. Smith, 57 Ohio St. 27, 48 N. E. 28. There the husband and wife entered into a separation agreement, which provided that the husband should convey a certain tract of land to the wife and to pay her the sum of $500 in cash. It contained this further provision:

"And each party releases any and all claim, right, title, or interest, either vested or contingent, in or to any property, present or future acquired, belonging to the other."

The husband died and the wife took possession of the property belonging to his estate. His brothers and sisters instituted the suit to acquire the properties belonging to such estate, claiming that by virtue of such contract she had waived her legal right to inherit the same. The court held that the wife did not part with her right to inherit, and in so doing, said:

"The contention of the brothers and sisters is that by the language of the agreement, 'and each party releases any and all claim of right, title, or interest, either vested or contingent, present or future acquired, belonging to the other, she is precluded now from the right to take or claim the property as the heir of her deceased husband, under the statute, and that she should be required to convey it to them. The only question that need be determined in this case is, as we think, whether by the above language she thereby waived the right to inherit such property as her husband might die seised of. If not, then it is not necessary to determine whether an agree-

ment, for a consideration, to renounce an expectancy of inheritance, is valid or not. It has generally been held not to be the subject of a contract of any kind. Needles v. Needles, 7 Ohio St. 432, and authorities there cited. But, conceding the contrary to be true, what, then, is the proper construction of the language in the agreement just quoted? After carefully considering it in connection with the whole agreement, we are satisfied that it cannot be construed to include the wife's expectancy of inheritance under the statute to such real property as her husband died seised of and intestate. Broad as the language is, it falls short of this construction."

The terms of the contract involved in Newton v. Truesdale, 69 N. H. 634, 45 Atl. 646, recited that certain disputes had arisen between the husband and wife with regard to their respective interests in certain real estate standing in the name of the husband, and certain personal property the title to which was vested in the wife, and that, in order to settle the same, the husband agreed to and did pay to the wife $6,000, which she accepted in full settlement of all of her right, title, interest, and separate estate in and to said properties. The contract contained this further provision:

"And in consideration of the payment of said $6,000 as aforesaid, she hereby releases all right, title, interest, or claim in and to said real estate, and the balance of said personal property remaining after the payment of said $6,000 as aforesaid."

Thereafter the husband conveyed the real estate to a trustee, and subsequently, on his request, it was conveyed to another person who executed a declaration of trust, in which she declared that she held it in trust for and would convey it upon demand of the said husband. He died intestate, and the wife claimed and was granted a widow's allowance of $500. A collateral heir of the deceased contested her right to such allowance upon the theory that by the terms of the contract she had waived such right. The Supreme Court of New Hampshire denied this contention. We quote from that decision:

"The situation at the time the agreement was entered into, as disclosed from the surrounding circumstances and from

the instrument itself, was the joint ownership by the husband and wife of property then in the husband's hands, and a disagreement as to the amount belonging to each. This controversy had reference to the respective interests which each party had in the property in the lifetime of the other. and to the portion that each should have upon the execution of the agreement. There is nothing to indicate that the controversy had any relation to the share which the survivor should take in the other's estate, or that, in making this agreement. they had that subject in mind. The purpose for which the agreement was made clearly appears in the instrument itself. The language of the second clause, 'Now, for the purpose of settling the same,' refers to the controversy about the division of this property, which had been clearly set forth in the preceding clause. And the further language, 'and of adjusting the rights of the respective parties therein and thereto, to the end that the said Martha J. Emery may receive her separate estate therein,' shows that the parties intended by this instrument to definitely fix the rights of each in this property. and give to the wife her separate estate. By the further terms of the instrument, she agreed to receive $6,000 'in full payment and satisfaction for all her right, title, interest, and separate estate in and to said real estate and personal property': and, in consideration of that sum, she released 'all right, title. interest, or claim in and to said real estate and the balance of said personal property remaining after the payment of said $6,000 as aforesaid.' And her husband, by the further terms of the writing, agreed to pay her that sum 'for all her right, title, interest, and separate estate in and to said real estate and personal property,' and further released 'all right, title, interest, and claim in and to said $6,000,' and agreed that she should hold the same 'as her own separate estate, in her own right, and to her sole and separate use, free from his interference and control, and to her heirs and assigns, forever."

"The language thus employed was apt and proper to effect a division of their joint property, and to provide that the wife's portion should be held as her separate estate, free from the control of her husband. There is no language in the instrument which indicates that the parties intended that the wife should release any claim she might have to the personal estate of her husband in case she survived him. If that had been the intention of the parties, they would doubtless have used proper language to express it."

A somewhat similar contract was involved in Jardine v. O'Hare, 66 Misc. Rep. 33, 122 N. Y. Supp. 463. There the husband and wife separated and entered into a contract wherein he agreed "not to make any claim of any kind against his said wife, and releases her from any and all claims whatsoever." She died; he obtained letters of administration upon her estate; and her father,

as next of kin, instituted the suit to secure an adjudica-
tion that he was the sole and absolute owner of her
estate.  The question turned upon a construction of the
contract, it being contended by the father that the
husband had thereby waived his right to inherit.  The
court held contrariwise, and in doing so said:

"The agreement between the parties cannot be regarded as
a waiver of any of their legal rights beyond the express terms
thereof; and, while 'he agrees not to make any claim of any
kind against her and releases her from any and all claims
whatsoever, there is no release of any claims or rights which
the law gives him in her estate upon her death."

Perhaps the strongest case against the contention of
the appellee and the conclusion of the trial court in
sustaining her, although it proceeds upon a different
theory to that adopted by us, is Hudnall v. Ham, 183
Ill. 486, 56 N. E. 172, 48 L. R. A. 557, 75 Am. St. Rep.
124.  The facts in that case are almost parallel with
those here.  The plaintiffs were collateral heirs of
Jeremiah Taylor, and the defendant and cross-com-
plainant was his surviving widow.  Prior to the mar-
riage of the said Jeremiah Taylor to his wife, Mary E.
T. Taylor, they entered into an antenuptial agreement
by which it was provided that in lieu of dower, award,
rights of inheritance, and distribution, she should, in
case she survived him, be paid within 60 days from and
after his death the sum of $2,000.  The husband died,
and the wife was paid and accepted the $2,000, and it
was contended by the plaintiffs that, by the terms of
the contract, coupled with the payment of the sum
therein recited, the wife had renounced and relin-
quished her right of inheritance.  The law of that state
with regard to descent and distribution, under similar
circumstances, seems to be identical with ours.  It is
provided that the entire estate shall descend to the wife,
and, if there be no wife, then to certain heirs.  The
court there held that the collateral heirs were not en-
titled to recover because they did not come within the
statute; that, by the very terms of the statute under

which they claimed, it was specifically provided that they should inherit only in the event there was no surviving wife, and that Mary E. T. Taylor was no less the wife of her deceased husband by reason of their separation and the execution of the agreement; that heirship is a matter of law and not one of contract, and that collateral heirs are not entitled to inherit merely because the wife has agreed with her husband otherwise; that their right to so inherit depends upon the nonexistence of a wife. The court, in expressing itself, said:

"And by the third paragraph, the widow, Mary E. T. Taylor, is made the sole heir of her deceased husband. Counsel for Hudnalls claim under the fourth paragraph of the statute. Had Mary E. T. Taylor died first, or hal there been no widow, it is plain they could inherit under this clause, as they were children and descendants of deceased children of Sallie Taylor, the mother of Jeremiah Taylor. But the difficulty with their position is that the statute would make them heirs only in case Taylor left no widow, and he did leave a widow. It is immaterial whether the widow has assigned, or has barred or estopped herself from taking or not, as their right to inherit does not, under the statute, depend on any act or contract of hers, but, so to speak, on her non-existence at Taylor's death. They cannot take under the statute against the statute at the same time. They are not his heirs at law at all, because he left surviving him a widow. If we were at liberty to interpolate words in the statute, and make it read, 'When there is no widow who has not released, or who is not barred or estopped by contract, the estate shall descend,' etc., the Hudnalls could be declared the heirs; but we have no authority to add to or qualify the statute, or to pervert its plain meaning. Mary E. T. Taylor is no less the widow of Jeremiah Taylor because she executed the antenuptial agreement. She was his lawful wife, and, upon his death became his lawful widow, and her antenuptial contract cannot be used to confer heirship upon these appellants, where none is conferred by the statute. Heirship is not created by contract, but by law only. Persons who inherit are heirs at law. not heirs by contract."

In that case the wife did expressly release her right of inheritance, but the court concluded under the terms of the statute the collateral heirs were not entitled to take the estate. We do not feel constrained to indicate what our views would be under facts similar to those there presented, because we have previously determined

that the contract before us did not provide that the wife thereby alienated her right to inherit from her husband. We merely suggest that under our statute an interesting question would be presented in the event a contract similar to the one we have before us did by express terms or necessary implication so provide.

Counsel for appellee strongly rely upon the case of In re Davis' Estate, 106 Cal. 453, 39 Pac. 756, which, upon principle, is in point and sustains their contention. They contend that the same principle of law was again announced by that court in the later case of In re Edelman's Estate, 148 Cal. 233, 82 Pac. 962, 113 Am. St. Rep. 231. While entertaining the greatest respect for the ability and learning of that court, we think its opinion in the Davis Case is against the weight of authority, and is not sustained by sound reason nor logic. The opinion in the Edelman Case cannot be said to be in point because the agreement there considered specifically provided that each party "waives all right and claim of inheritance to succeed to any part of the property as an heir or successor at law, upon or in the event of death," thus expressly relinquishing the right to so inherit.

From what we have said, it follows that the cause must be reversed and remanded with directions to enter a decree awarding the entire estate, subject to the payment of the two bequests of $1 and $2,000, respectively, to the appellant, and it is so ordered.

PARKER, C. J., and BOTTS, J., concur.