[Civ. No. 16270.   Second Dist., Div. One.   Aug. 23, 1948.]

FRANK H. SCHUBERT, Respondent, v. ANDREW REICH,
Appellant.

Clyde Thomas for Appellant.

Joseph Doyle for Respondent.

DORAN, J.—This is an appeal from the judgment by defendant in an action alleged to be for declaratory relief.

The complaint alleges that plaintiff was in the business of "growing, cultivating, harvesting and marketing dates and date by-products which are grown upon real property owned and operated by plaintiff"; that defendant is engaged in the business of "grading, packing, reconditioning, storing, shipping and selling dates and date by-products"; that during the 1945 season "plaintiff became aware that some of the dates grown and harvested in plaintiff's date gardens in Riverside County had become infested with insects and mold." The legal requirements specified by the Agricultural Code in such circumstances are also alleged. It is then alleged that, "during the month of October, 1945, plaintiff discussed said situation with defendant Andrew Reich and informed said Andrew Reich that said field-run dates must be graded and reconditioned so as to comply with said Agricultural Code, and said defendant Andrew Reich did then and there warrant and represent to plaintiff that if plaintiff would deliver said field-run dates to defendant at defendant's packing house located in Covina, California, that defendant would and he did then guarantee to grade, process and recondition said dates, and each and all thereof, in such manner that the same and all thereof when so graded, processed and reconditioned would comply with each, every and all of the provisions of the Agricultural Code and of the regulations of the Department of Agriculture of the State of California; that in reliance upon said representations and warranties and verily believing the same, plaintiff did then and there enter into an oral contract and agreement with defendant Andrew Reich wherein and whereby the latter contracted and agreed that he would upon receipt at his packing house in Covina, California, proceed forthwith to grade, process and recondition said dates in a good and workmanlike manner and in such manner that the same, and each and all thereof, would conform to the laws, rules and regulations of the State of California, made and provided for dates and date by-products, as aforesaid, *for which services plaintiff did then and there agree to pay to defendant the reasonable value thereof, said payment to be made when and after said dates had been*

*so graded, processed and reconditioned so as to comply with the laws of the State of California and the regulations of the California Department of Agriculture."* (Emphasis added.)

It is then further alleged that plaintiff, pursuant to said agreement thereafter delivered to defendant 135,000 pounds of dates and that defendant claims to have "rendered services to plaintiff under the terms of said oral agreement," and, "by reason thereof has claimed and asserted a lien against said dates in the amount of Six Thousand Forty-two and 07/100 Dollars ($6,042.07) and does now claim and continue to claim a lien against said dates under the provisions of section 3050 et seq. of the Civil Code of the State of California." It is then further alleged that defendant failed and refused to "fulfill the terms of said oral agreement." It is also alleged that "an actual controversy has arisen," that defendant has demanded payment of the above-mentioned sum but that defendant is not entitled thereto "because of defendant's failure to comply with the terms of said agreement." The prayer was for a restraining order to prevent the enforcement of the lien and for a "declaration of the rights of the parties."

The answer in substance admits a transaction but denies any failure or refusal to comply with the terms of the agreement and, "admits he claims and alleges that he is entitled to a lien on said dates for the services rendered by him in grading, reconditioning and processing said dates in the sum of $6,042.07 and desires that said lien be enforced and the dates sold and the proceeds applied in satisfaction thereof. Further admits that he has taken steps to foreclose said lien and desires to continue to do so and has only desisted from the enforcement thereof because of the injunction entered in the above entitled action."

The court found for plaintiff, which findings, in part, recited, "the *custom prevailing* in the date and date grading, reconditioning and processing industry for California-grown dates was for California graders, reconditioners and processors to grade dates by external inspection, sometimes called 'sight-grading', if thereby the graded dates met or exceeded the standards set forth in the Agricultural Code of the State of California and the rules and regulations of the Department of Agricultural of the State of California, and if by the use of said 'sight-grading' method the graded dates did not or could not be made to meet or exceed said standards, then in that event said graders graded and processed dates by sup-

plementing said 'sight-grading' method with, or substituting for said 'sight-grading' method, grading by internal inspection wherein dates are cut, opened and examined for defects, *and no extra charge was made for grading by or with the use of the* internal inspection method.'' (Emphasis added.)

The findings also recite that ''on and after December 10, 1945, defendant demanded that plaintiff pay to defendant sums of money sufficient to defray defendant's labor costs in the cutting, opening and examining of plaintiff's said dates, except said culls, and to finance the operation of grading and reconditioning of said dates, except said culls, by internal inspection by paying defendant for each lot as defendant finished said grading and reconditioning; that plaintiff refused and continues to refuse to pay and has not paid said demanded sums or any part thereof, and plaintiff demanded that defendant fulfill the terms of said oral agreement; that defendant has failed and refused to fulfill the terms of said oral agreement and has failed and continues to fail to grade, process or recondition plaintiff's said remaining dates or any part thereof in accordance with the terms and provisions of said oral agreement.''

The evidence which, incidentally, is not without conclusions, reveals in substance that plaintiff is a date grower at Indio in Riverside County and that defendant is, and had been for 10 or 12 years, engaged in the business of culling and processing dates at Covina in Los Angeles County and, as correctly recited by defendant and appellant:

''In 1945 plaintiff harvested his crop of dates and as is usual, such 'field-run' dates had to be graded, processed, and reconditioned for marketing and to meet the requirements of the law of California as established in the Agricultural Code. The custom of the industry is to grade dates by 'sight-grading', that is, picking out dates which are found to be defective by visual observation. If the dates thus graded did not meet the standards required by law, it was the custom of the industry to supplement the sight-grading by cutting each date and making an internal inspection thereof.

''Defendant negotiated with plaintiff for the processing of dates grown by plaintiff during the 1945 season and they entered into an oral agreement under which plaintiff was to and did deliver dates to defendant's place of business at Covina, California, defendant agreeing to grade, process, and recondition plaintiff's 'field-run' dates in a good and work-

manlike manner and plaintiff agreeing to pay defendant the reasonable value of such services.

"Pursuant to said oral agreement plaintiff delivered approximately 128,523 lbs. of 'field-run' dates to defendant. The dates received by defendant were processed by him and approximately 90,902 lbs. remained in his possession at the time of filing this action.

"On and after December 10, 1945, the dates remaining in the possession of defendant were inspected by the Los Angeles County Agricultural Commissioner and red-tagged as containing 7% beetles and 8% mold and therefore were below the requirements of the Agricultural Code and could not be marketed.

"Defendant claimed payment of $6,042.07 as due and owing by plaintiff to defendant for defendant's services upon plaintiff's dates and plaintiff denied that he owed such sum or that defendant was entitled to a lien on said dates therefor. Defendant threatened and began proceedings to foreclose a lien on said dates for the money claimed by him and was stopped by the filing and issuance of a restraining order in the instant action."

It is contended on appeal that "the conclusions of law and judgment are not in accordance with or supported by the findings of fact," and that "the findings of fact are not sustained by the evidence."

On December 10, 1945, defendant wrote plaintiff the following letter:

"Dec. 10, 1945.

"Frank Schubert
  Sun Gold Date Gardens
  P. O. Box 98
  Indio, California

Dear Frank:

The Standardization Inspectors have tied up your fruit that is packed and suggested that they see the rest of the ungraded fruit after it is graded. Also Mr. Ridenour just phoned that 18 flats, hydrated, have been red-tagged, and that they are being returned to us. Mr. Hubble is also delivering to us about 10,000 pounds of graded dates to be cut etc.

We have no understanding with you for cutting and inspection. It will run into considerable labor, which of course is cash. We will do this work for you, but we will have to expect you to finance the operation by paying for each lot as it is finished. Our price is: actual cutting labor cost, plus

average floor labor cost, and operation cost of .0168 cents per pound.

We would appreciate having a letter from you so that we might get under way.

Very truly yours,

ANDREW REICH

P. S. What shall we do with the cull dates? We have several thousand pounds of your cull dates already graded out which must be disposed of promptly. As a suggestion, Calavo is selling their culls to Parker Bros. for delivery to Randisi Winery. Let us know on this too.''

Plaintiff wrote nothing in reply and on January 2d, defendant sent plaintiff the following telegram:

"Jan. 2, 1946

"Frank Schubert
Sun Gold Date Gardens
Indio, Calif.

To date no reply from you to our letter of Dec. 10, 1945. Shall we proceed to cut dates in order that the dates may pass inspection. Please do not delay any longer to answer.

ANDREW REICH.''

Plaintiff made no reply in writing or by wire to the above telegram.

A controversy had developed which appears from the evidence to have resulted from the quality of the 1945 crop rather than from any shortcoming or default on the part of defendant. Indeed so far as the evidence shows, there was no violation of the agreement at all by defendant. So far as can be determined by the evidence, the parties agreed that defendant was to grade the dates first by "sight-grading" and if by this method the graded dates do not meet the "standards required by law" then the dates are cut one by one, opened and examined for defects. This the defendant was willing to do. It should be noted that when this situation developed defendant had already graded and returned to plaintiff 37,621 pounds for which defendant had not been paid. The date season continues for several months during which period dates are delivered from time to time in varying quantities for inspection. When defendant demanded payment as above noted in the letter of December 10, plaintiff refused to pay and took the position that no money was due until the entire crop had been processed to meet the legal requirements. Not

only is there no evidence to support plaintiff's position in this regard but the complaint affirmatively alleges, as above noted in italics, that plaintiff agreed to pay for such services, *"after said dates had been so graded etc.,"* and as the evidence clearly discloses, that is all that defendant was trying to accomplish.

As to the quality of the crop and the cost of processing, plaintiff testified on cross-examination as follows:

"Q. And did the dealing during 1944-1945 have anything to do with any cutting problem? A. I don't recall, no, I don't think there was any cutting problem.

"Q. You did not have any, and when you made the agreement prior to delivery in October, 1945, was there any conversation relative to the price to be paid for cutting? A. None at all, it never was discussed.

"Q. It was never contemplated? A. Never contemplated nor discussed."

With relation to the question as to how dates are graded, evidence of custom was properly received; indeed there is no dispute on this point but, the court's finding, above emphasized, to the effect that according to the *"custom prevailing"* . . ."no extra charge was made for grading by or with the use of the internal inspection method" goes farther than the law authorizes. It is well settled that evidence of custom is proper in some cases and for some purposes, but the rule in this regard has never been extended to include evidence of a custom as to whether a party to a contract is entitled to assess a "charge" for services rendered.

The finding that, "defendant demanded that plaintiff pay to defendant sums of money sufficient to defray defendant's labor costs in the cutting, opening and examining of plaintiff's said dates," is not only unsupported by the evidence but is refuted by the record as an examination of the complaint and defendant's letter of December 10, both as above recited, will show. Obviously, defendant's statement in the letter, to wit, "we will have to expect you to finance the operation by paying for each lot as it is finished," and that, "It will run into considerable labor, which of course is cash," is merely an explanation of why defendant *expected* to be paid for each lot as it was finished. In no sense is it a presumptuous or unreasonable "demand" in violation of the agreement as implied by the findings. Actually defendant paid the labor costs, indeed all of the costs, and not the plain-

tiff. Under the terms of the agreement the plaintiff manifestly was supposed to pay for the services rendered.

The court's finding that defendant "has not rendered any service by labor or skill or otherwise for the protection, improvement, or safekeeping of plaintiff's dates or any part of them," also lacks support in the evidence. The record reveals that any failure on the part of defendant after the dispute arose was due to instruction from plaintiff who the evidence shows made other arrangements; plaintiff had, in effect, effectively terminated any contract that had existed. Assuming, but by no means deciding that the action in declaratory relief was appropriate and valid, it is evident from a review of the record that the findings are unsupported by the evidence.

For the foregoing reasons, the judgment is reversed and the cause remanded.

York, P. J., and White, J., concurred.