**FIELDS et al. v. FIELDS.**

No. 12204

United States Court of Appeals,
Ninth Circuit.

Nov. 18, 1949.

John W. Preston, John W. Preston, Jr., Los Angeles, Cal., for appellants.

G. Allen Bisbee, Wendell Davis, Los Angeles, Cal., for appellee.

Before STEPHENS and POPE, Circuit Judges, and McCORMICK, District Judge.

POPE, Circuit Judge.

W. C. Fields, the comedian, died December 25, 1946. By reason of his death, the Penn Mutual Life Insurance Company became liable upon a single premium life insurance policy which Fields had purchased from the company on March 8, 1934. The company paid one-half of the proceeds of this policy to the designated beneficiaries, Walter Fields and Adel C. Smith, appellants herein. Because the comedian's wife, Harriet V. Fields, with whom he had not lived since 1907, claimed half the proceeds of the policy by virtue of Sections 163, 164 and 172 of the California Civil Code,[1] the company filed its complaint in interpleader against the designated beneficiaries and Mrs. Fields, and paid the balance of the proceeds of the policy into the registry of the court. Jurisdiction is based upon the diversity of citizenship of the parties.

Both appellants and appellees answered claiming the sum, appellants contending that the premium was paid from the separate property of Fields while appellee contended that it was paid from the community earnings of the decedent and herself.

The trial judge found that the earnings and, consequently, the money paid for the policy, were the community property of Fields and appellee and that the payment of the sum of $26,500 for the insurance contract, the proceeds of which were to be paid to appellants, was a gift of that community property. Since, under California law a husband cannot make a gift of community personal property without the writ-

1. Sec. 163. "Separate property of the husband. All property owned by the husband before marriage, and that acquired afterwards by gift, bequest, devise, or descent, with the rents, issues, and profits thereof, is his separate property."

Sec. 164. "Property acquired after marriage. Limitation of actions. All other property acquired after marriage by either husband or wife, or both, including real property situated in this State and personal property wherever situated, heretofore or hereafter acquired while domiciled elsewhere, which would not have been the separate property of either if acquired while domiciled in this State, is community property; * * *."

Sec. 172. Management of community personal property. The husband has the management and control of the community personal property, with like absolute power of disposition, other than testamentary, as he has of his separate estate; provided, however, that he cannot make a gift of such community personal property, or dispose of the same without a valuable consideration, or sell, convey, or encumber the furniture, furnishings, or fittings of the home, or the clothing or wearing apparel of the wife or minor children that is community, without the written consent of the wife.'

ten consent of his wife, and since such consent had not been given in this case, the trial judge concluded that the appellee was entitled to one-half of the proceeds of the policy.

Appellants concede that there was evidence sufficient to support the court's finding that the funds used to purchase the policy were derived from Fields' earnings while domiciled in California, but challenged the findings on the ground that the evidence discloses an agreement or agreements entered into in New York at the time of or after the separation of Fields and his wife "whereby she accepted payment of monthly sums for life in lieu of any claim or interest in the earnings and property of the said William C. Fields". They contend that under the law of New York, a common law state, a wife's sole right in her husband's earnings is to support and that the New York agreement and its performance barred any other right in the earnings of the husband during his lifetime including his earnings after removal of the parties to California where there was no resumption of the marital relationship. It is said that by reason of the alleged agreement no community property right ever arose.

We find it unnecessary to consider the question whether an agreement of the kind which the appellants claim was made would effectively prevent the arising of a community property claim upon the initiation of the California domicile, for the trial court found that there was no such agreement and we are of the opinion that in this finding the court was right.[2]

No formal written agreement was produced. Appellants sought, mainly on cross-examination of the appellee, to elicit from her an admission that there had been an agreement as claimed by them. She testified as follows:

"Q. You had an understanding with him, did you not, at the time of your sep-aration, about what your support would be? A. No; we never had an understanding. I would just have to take what he gave me.

"Q. Didn't you have an agreement with him as to how much you were to receive? A. No, indeed.

"Q. Are you sure of that? A. Positive, because he fluctuated so often. He would raise me $5.00 and then diminish it $10 a week. He was very small.

"Q. He did furnish you a certain amount each week, didn't he? A. Yes; each week.

"Q. And kept that up as long as he lived? A. As long as he lived; yes.

"Q. And you say it varied from greater sums sometimes to lesser sums at others? A. Yes. I never knew when he would come down or add to it.

"Q. You frequently communicated with him on this subject? A. I just wrote a receipt of what I got from him.

"Q. Didn't he tell you that this was to be a part of a fulfillment of his agreement with you? A. I had no agreement with him."

A considerable number of letters between Fields and his wife were produced in an effort to show that an agreement existed between the parties. Some of these letters contained language from which it might be inferred that some sort of agreement existed between them. Thus, in some of her letters to Fields Mrs. Fields referred to his being in "arrears" in his payments. In other letters she referred to a "weekly remittance" or "weekly money". On one occasion she acknowledged receipt of $65.00 which she said was "$5.00 too much—however, it will keep until next week". In 1938 Fields wrote her asking whether it was her "understanding and agreement" that he should send her $70 a week for a period of ten or twelve weeks to be followed by remittances of $50 per week for a like period

2. The finding that there was no such agreement is implied in the court's finding No. V that the money paid for the insurance contract was the community property of Fields and the appellee. The trial judge filed an opinion in which he expressly stated that he found no agreement of the kind claimed. Penn. Mut. Life Ins. Co. v. Fields, D.C., 81 F.Supp. 54, 62.

"after which we return to the $60 per week arrangement again". On cross-examination Mrs. Fields was asked with respect to that letter: "Didn't you make that proposition to Mr. Fields?", to which she answered, "Yes, but I never answered his letter because it was so small and cheap."

There is some dispute between the parties as to whether some of the letters which were produced upon an application for leave to reopen the case were ever actually made a part of the record. However, we have examined all of them carefully, and in our opinion there was not only substantial evidence to support the finding of the trial court, but there was a complete failure to produce any evidence even remotely tending to show an agreement of the kind asserted by appellants. The record shows that Fields did make remittance of sums for the support of Mrs. Fields for the entire period of their separation, but the weekly amounts varied from $25 to $75. Even if it be assumed that payments were made pursuant to agreement between the parties, it cannot be told from this record whether there was a series of agreements for different amounts or one agreement which left it optional with Fields to vary the payments either as he saw fit or in accordance with his own judgment of his ability to pay. There is a complete absence of any evidence that Mrs. Fields ever accepted the payments or agreed to accept them as payments *in full* of her claim for support or that they were to be accepted by her in lieu of any claim or interest in the earnings of Fields. That appellants understood that such proof would be required on their part is made manifest by the wording of their specification of errors No. 4 as follows: "4. The District Court erred in holding that defendant, Hattie V. Fields, did not enter into a property settlement agreement with the decedent, William C. Fields whereby she accepted payment of monthly sums for life *in lieu of any claim or interest in the earnings and property of the said William C. Fields.*" (Emphasis ours)

Appellants say that if, as claimed, an agreement were made in New York while the parties were domiciled there, the law of that state would govern the construction of the agreement. In the case of In re Griffith's Will, 167 Misc. 366, 3 N.Y.S.2d 925, 927, the law of that State is said to be as follows: "* * * 'the agreement between the parties cannot be regarded as a waiver of any of their legal rights beyond the express terms thereof,' Jardine v. O'Hare, 66 Misc. 33, 34; 122 N.Y.S. 463, 464.

"This rule has been approved, in effect, by our Court of Appeals (Matter of Burridge's Estate, 261 N.Y. 225, 229, 185 N.E. 81), where it cites Girard v. Girard, 29 N.M. 189, 221 P. 801, 804, 35 A.L.R. 1493. The official syllabus of the decision last cited states: 'In the construction of contracts, where it is sought to deprive either husband or wife of property rights growing out of the marital relation, courts will go no further than the language of the contract extends, and will not deprive either spouse of such rights unless there is a clear and unmistakeable intention to barter them away.'"

The case of In re Burridge's Estate, 261 N.Y. 225, 185 N.E. 81, 82, cited by appellants, has no relevance to the facts in this case for there the court was dealing with a stipulated provision for the support of a wife which she accepted "in lieu of 'all other claim and provision for her support' as well as in lieu of her dower right." The same is true of the other cases cited.

Examination of the New York cases referred to convinces us that if Fields had been sued by Mrs. Fields in the State of New York for separate maintenance or alimony, the New York courts would hold that Fields could not defend against a claim for amounts measured by his own ability to pay and the needs of his wife by showing no more than appellents did here. This because there is a complete failure of evidence that Mrs. Fields agreed to accept the amounts she received in full of all her claims on Fields.

Our holding that there was no evidence of the claimed agreement renders it unnecessary to comment upon whether under the New York law it would be encumbent upon one asserting the existence of an agreement

of the kind claimed by appellants to prove not only that the agreement was made but that the amount paid was suitable and equitable.[3]

The judgment is affirmed.

---

3. Hungerford v. Hungerford, 161 N.Y. 550, 56 N.E. 117, 118: "But it must be borne in mind that a contract between husband and wife is void at law and upheld solely in equity, and then not in every case, but only where the provision for the maintenance of the wife or children is suitable and equitable." Accord: Tirell v. Tirell, 232 N.Y. 224, 133 N.E. 569. Cf. Matassa v. Matassa, 87 Cal.App.2d 206, 196 P.2d 599.