SCHWARTZ, Chief Judge.
In August 1978, the appellant Harry Chippas[1] executed two notes and mortgages on real property he owned in Dade County in favor of the appellee Midland Insurance Company. The instruments were to serve as collateral on a $500,000 bail bond written by Midland to secure the release, pending trial, of Chippas’s son, Louis Chip-pas, who had been arrested and jailed on a felony charge in Mercer County, New Jersey. The mortgages provided that they were to secure the “above-described bail bond, any extension, sustitutions [sic] or increments.” In 1980, Louis Chippas, having made each of his required appearances in the New Jersey trial court, was convicted of the charges and, in early 1981, sentenced to serve three to five years in prison. The original bail bond was thereupon cancelled and discharged. After receiving a $50,000 payment from Louis Chippas’s *496 wife,[2] but without the agreement of or even consulting with Harry Chippas in any way, Midland posted a new and separate $500,000 appeal or supersedeas bond for Louis’s release pending appeal.[3] After his conviction had been affirmed, however, Louis did not surrender to serve his sentence, and the supersedeas bond, the terms of which had thus been breached, was es-treated to the state of New Jersey. Midland paid the $500,000 principal amount and then commenced the present action against Harry Chippas to foreclose the mortgages on the contention that they served as collateral for the appeal bond. His primary contention in defense was that they did not. After a non-jury trial, the lower court ruled for the surety, but we reverse the judgment.
Our holding is based on the conclusion that, as a matter of law, the mortgages, in language drafted by Midland, clearly guaranteed only the bail bond securing Louis’s required appearances before the trial court,[4] and did not, so to speak, extend or apply to the quite distinct obligation represented by the supersedeas bond. The essential conditions of a bail or appearance bond, of the type secured by the Chip-pas mortgages, is, as its name suggests, that the defendant make all required appearances in the trial court. 8 C.J.S. Bail § 15 (1962). When, the trial proceedings come to an end — providing that, as here, the defendant has complied with that condition — the appearance bond has served its purpose and must, as it actually was in this case, be discharged. Accredited Surety & Casualty Co., Inc. v. State, 318 So.2d 554 (Fla. 1st DCA 1975); Gustafson v. State, 251 So.2d 689 (Fla. 4th DCA 1971), cert. denied, 254 So.2d 789 (Fla.1981); see State v. Rice, 137 N.J.Super. 593, 350 A.2d 95 (Essex County Ct. 1975), aff’d, 148 N.J.Super. 145, 372 A.2d 349 (1977). A criminal appeal or supersedeas bond is quite a different animal. Its only function is to assure that the now-convicted defendant will surrender to serve his sentence if and when it is affirmed on appeal — and its only real condition is that he do so. Younghans v. State, 90 So.2d 308 (Fla.1956); see generally 14 Fla.Jur.2d Criminal Law §§ 425, 426 (1979). For the self-evident reason that the defendant’s presumption of innocence and chances of acquittal have dissipated and that he is required to subject himself to a sure and certain term of incarceration, the risk of non-compliance and consequent loss in writing and guarantying an appeal bond are far greater in theory — and in the present instance were far greater in practice — than those involved in an appearance bond. That one who, like the appellant, agrees to collateralize the latter obviously says nothing about his willingness to do so for the former. Since two different bonds were thus so clearly involved, we consider that the case is controlled, and reversal is required, by the rule stated in Veach v. Rice, 131 U.S. 293, 317, 9 S.Ct. 730, 738, 33 L.Ed. 163, 171 (1889):
[Wjhen the second or subsequent bond is given for a new and different undertaking, it operates, ipso facto,, as a dis *497 charge of the prior parties ... [T]he sureties on the first bond are discharged from all further liability on account of their principal, [emphasis supplied]
Nor is the result affected, as Midland contends, by the provision that the mortgages covered the “bail bond, any extension, substitutions or increments.” In the closely analogous case of Zero Food Storage, Inc. v. Udell, 163 So.2d 303, 10 A.L.R.3d 577 (Fla. 3d DCA 1964), this court held that a guaranty of rental payments under a lease does not continue into a renewed or successive term in the absence of “specific words” or “express terms” to that effect. Id., at 304. See also, Scott v. City of Tampa, 158 Fla. 712, 30 So.2d 300 (1947) (obligations of guarantee strictly construed in favor of the guarantor when contract is unambiguous); Mohasco Industries, Inc. v. Maxwell Co., 425 F.2d 436 (5th Cir.1970) (applying Florida law; same). It is obvious that the expression relied upon— even when its grammatical, rhetorical, and spelling defects are corrected — does not meet this exacting test. By reason of their juxtaposition to the words “above described bail bond,” that is, the appearance bond in question, the words “extensions,” “substitutions” and “increments” may be deemed to refer only to any modifications of time or amount in that bond or a replacement (a substitution) of that bond with another or different one of the same type and kind. See, e.g., Móndale v. Commissioner of Taxation, 263 Minn. 121, 116 N.W.2d 82 (1962) (“substitution” means stepping into the shoes of one who has acquired a status, in the same capacity as the one who is replaced); Lewis v. Bradley, 7 Wis.2d 586, 97 N.W.2d 408 (1959) (“substitute automobile” for insurance purposes refers to one which has “same use” as the vehicle it replaces); cases collected, 40 Words and Phrases, Substitute, Substitution (1964). The phrase does not at all, let alone “specifically” or “expressly,” as Zero Food requires, suggest that Mr. Chippas’s obligation extended to the entirely different and far more expansive obligation which Midland so improvidently, and unilaterally, undertook.[5]
For these reasons, the final judgment for Midland and the consequent order assess *498 ing attorney’s fees in its favor, which is also under review, are reversed. The cause is remanded with directions to dismiss the complaint.
Reversed.

. His wife, who has since died, joined in each of the instruments in question.

. Whether the $50,000 was a premium for the new bond or merely additional collateral for the previous undertaking was the subject of a hot dispute below which is irrelevant to our view and resolution of the case here.

. After an initial motion for release on bond pending appeal was denied, Louis spent two weeks in jail before a renewed motion was granted and Midland posted the supersedeas bond now in issue.

. The mortgages stated:
THIS MORTGAGE DEED is accepted as collateral for bail bond P.A. #_ Circuit Court. In and for Mercer County, State of N.J., posted on behalf of LOUIS CHIPPAS, and shall be returned when all obligations arming from this undertaking have been satisfied with no loss to MIDLAND INSURANCE CO., and/or its agents. In the event of forfeiture of the above mentioned bond, it is the intention of this mortgage and the note secured herein, that it shall serve as full and complete security on the above described bond, and to hold MIDLAND INSURANCE CO., and/or its agents, harmless for any loss whatsoever sustained in connection with said bond.
This Mortgage and the Note secured by it shall serve as full security for the above described bail bond, any extension, substitutions or increments, [emphasis supplied].

. Our holding that, properly construed, the mortgages may not be held to apply to the appeal bond necessarily means that it was improper for the lower court to have received and considered the extensive parol testimony concerning the parties’ purported “intent” when they were executed. E.g. Mohasco Industries, Inc. v. Maxwell Co., supra; Sears v. James Talcott, Inc., 174 So.2d 776 (Fla. 2d DCA 1965); Airlift International, Inc. v. Boyd, 280 So.2d 57 (Fla. 3d DCA 1973), cert. denied, 284 So.2d 698 (Fla.1973). We need not concern ourselves, therefore, with the thus-irrelevant question of whether the record supports the lower court's finding that’ Chippas and Midland both "intended” the mortgages to stand over to the appeal bond. We do note, however, that since the mortgages were executed well before even the appearance bond was posted, and at a time when an appeal bond was not so much as contemplated, even the Midland attorneys who dealt with Chippas (and whose testimony was credited by the trial judge) admitted that no such bond was mentioned or referred to in their conversations with him. In these circumstances, the observations of the court in Mohasco seem directly apropos:
Although we have no doubt as to the meaning of the language used in the Greenfield guaranty, it may be observed that the instrument was prepared and executed before the making of the arrangement for buying from other distributors. The inference follows that since such an arrangement was not contemplated, the guaranty of the price of goods purchased pursuant to the arrangement was not intended. The testimony of Mohasco’s credit manager does not show a construction of the guaranty by the parties but rather an intent to enlarge its scope. This would not only fall under the prohibition of amending a writing by parol but would be an oral undertaking to pay the debt of another in violation of the statute of frauds. Fla.Stat. § 725.01, F.S.A.
425 F.2d at 439.
Moreover, in this situation, compare Ponce Development Co. v. Espino, 449 So.2d 317 (Fla. 3d DCA 1984), the fact which the trial court heavily relied upon to show his interpretation by performance of the agreement — that Chippas did not demand the return of his mortgages after the appearance bond was discharged — is of no moment. Again, Mohasco is on point:
The fact that an erroneous construction has been given to the contract by the parties will not preclude the Court from giving the instrument its true construction. City of Tampa v. W.L. Cobb Const. Co., 135 Fla. 630, 185 So. 330; People's Savings Bank & Trust Co. v. Landstreet, 80 Fla. 853, 87 So. 227.
425 F.2d at 438.