464 So.2d 1203 (1984)
Marguerite Petitjean BASSETT, Appellant,
v.
Harry Hood BASSETT, Appellee.
No. 83-1997.
District Court of Appeal of Florida, Third District.
October 2, 1984.
On Rehearing February 12, 1985.
*1204 Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, Paul Louis and John Zavertnik, Miami, for appellant.
Steel, Hector & Davis and Talbot D'Alemberte and Clay Craig, Miami, for appellee.
Before SCHWARTZ, C.J., and BARKDULL and DANIEL S. PEARSON, JJ.
SCHWARTZ, Chief Judge.
Ms. Bassett appeals from the denial of her motion for upward modification of the alimony provision of an agreement incorporated into a final decree of divorce rendered in 1955. The order was founded on the trial court's determination, reached after taking testimony concerning the surrounding circumstances and the parties' intentions when it was executed, that the agreement embodied a relinquishment of Ms. Bassett's statutory right to modification. We reverse because of the absence of a clear waiver, by express language or necessary implication from the document itself, which we conclude is required as a matter of law to effect that result.
The difficult question before us concerns the generally familiar problem of the tension between a governmentally mandated right, on the one hand, and the attempt of individuals to regulate their own affairs, on the other. In resolving that issue in the present context, we are strongly influenced by the fact that the right involved  that is, the one to modification of an existing alimony award in the light of changing circumstances  has been established by the legislature in the broadest and most compelling terms. Section 61.14, Florida Statutes (1981), which has been in effect in virtually the identical form since the mid-1930's, provides:
(1) When a husband and wife have entered or hereafter enter into an agreement for payments for, or instead of, support, maintenance or alimony, whether in connection with an action for divorce or separate maintenance or with any voluntary property settlement or when a husband is required by court order to make any payments to his wife, and the circumstances of the parties or the financial ability of the husband has changed since the execution of such agreement or the rendition of the order, either party may apply to the circuit court of the circuit in which the parties, or either of them, resided at the date of the execution of the agreement or reside at the date of the application or in which *1205 the agreement was executed or in which the order was rendered, for a judgment decreasing or increasing the amount of support, maintenance or alimony, and the court has jurisdiction to make orders as equity requires with due regard to the changed circumstances and the financial ability of the husband, decreasing or increasing or confirming the amount of separate support, maintenance or alimony provided for in the agreement or order.
* * * * * *
(3) This section is declaratory of existing public policy and laws of this state which are hereby confirmed in accordance with the provisions hereof. It is the duty of the circuit courts to construe liberally the provisions hereof to effect the purposes hereof. [emphasis supplied.]
While it is firmly established in Florida that the availability of statutory modification is indeed subject to being waived, Lee v. Lee, 157 Fla. 439, 26 So.2d 177 (1946); Stebbins v. Stebbins, 435 So.2d 383 (Fla. 5th DCA 1983); Jaffee v. Jaffee, 394 So.2d 443 (Fla. 3d DCA 1981); Turner v. Turner, 383 So.2d 700 (Fla. 4th DCA 1980), pet. for rev. denied, 392 So.2d 1381 (Fla. 1980), the legal requirements for its accomplishment have not previously been articulated. In undertaking that task, as is necessary to resolve the present controversy, we conclude that the force of the statutory admonition dictates that an effective waiver of the right to modification may be deemed to arise only when it is stated either in express terms or through an interpretation of the agreement as a whole which can fairly lead to no other conclusion. This, or a close variation, is the rule which has been adopted as to this precise issue in states which, like ours, are willing to recognize the validity of such a waiver in appropriate circumstances.[1] See Garcia v. Garcia, 232 Ga. 869, 209 S.E.2d 201 (1974); McClain v. McClain, 241 Ga. 422, 246 S.E.2d 187 (1978); Varn v. Varn, 242 Ga. 309, 248 S.E.2d 667 (1978);[2]Dull v. Dull, 73 Ill. App.3d 1015, 29 Ill.Dec. 864, 392 N.E.2d 421 (1979). It is also the principle applied to analytically indistinguishable situations which involve alleged contractual waivers of other statutorily created marital rights. Thus, in the leading case of Girard v. Girard, 29 N.M. 189, 221 P. 801 (1923), the court said, in rejecting the contention that a separation agreement waived the wife's statutory right of inheritance:
We set off to consider such contract with the well-established rule of construction in mind that, in instances of this kind, where it is sought to deprive either husband or wife of property rights growing out of the marital relation, courts will go no further than the language of the contract extends; they will not come to the aid of such contracts so as to deprive either spouse of such rights unless there is a clear and unmistakable intention to barter them away, and, to reach such a conclusion, the contract must not be of doubtful interpretation, but must, by express terms or by necessary implication, clearly so provide. 30 C.J. 646; Jones v. Lamont, 118 Cal. 499, 50 Pac. 766, 62 Am.St.Rep. 251; In re Peet's Estate, 79 Iowa, 185, 44 N.W. 354; Baughman v. Baughman, 283 Ill. 55, 119 N.E. 49, Ann.Cas. 1918E, 895; Richardson v. De Giverville, 107 Mo. 422, 17 S.W. 974, 29 Am.St.Rep. 426.
Necessary implication, in the sense that it is here used, means so strong a probability of intention that an intention to the contrary or otherwise than that imputed to appellant cannot be reasonably supposed.
221 P. at 803. Accord, In re McNutt's Estate, 36 Cal. App.2d 542, 98 P.2d 253 (1940); see In re Colaci's Estate, 288 N.Y. 158, 42 N.E.2d 466 (1942); Application of Curran, 274 App.Div. 250, 80 N.Y.S.2d 421 (1948).
*1206 It is clear that the lengthy, diffuse, and, on the present issue, wholly inconclusive agreement before us fails completely to meet this test. The mass of boiler plate language[3] upon which the husband relies,[4] *1207 does no more than express an integration and finalization of the Bassetts' agreement to terminate their marriage and resolve its then-existing financial ramifications. It did not  certainly not with the requisite clarity  accomplish the quite different result of ousting the court of its mandated authority to consider their future situation in the light of the changes effected by advancing years, in this case, by almost thirty of them. See Wolfe v. Wolfe, 424 So.2d 32, n. 1 (Fla. 4th DCA 1982) ("in such agreements between spouses, if the parties desire that the wife be paid alimony without the payments being modifiable, they should express it.")
This holding is supported by comparing the amorphous terms of the instant agreement with the definite ones in the Florida cases which have found a waiver of modification. In this regard, the supreme court decision in Lee is undoubtedly the most significant. The husband strongly contends  and the trial court agreed  that the fact that paragraph 32 of the Bassett agreement[5] is identical to a portion of the final decree in Lee requires affirmance. We think otherwise. In our view, the significant factor in the Lee agreement was the provision for a sliding scale of alimony, which included a maximum amount, related to any increments in the husband's future income. Thus, Stephenson v. Stephenson, 408 So.2d 730 (Fla. 1st DCA 1982), states that
[i]n Lee, the parties agreed the husband would, "during his life" pay alimony based upon a complicated schedule which varied with the husband's ability to produce income. Based on the entirety of the circumstances, the court noted the only logical construction of the stipulated settlement was that the parties had "forever settled" the amount the wife would receive. [Emphasis supplied.]
408 So.2d at 731. See also Turner v. Turner, supra. The Bassett agreement contains no equivalent to the thus-decisive aspect of Lee.[6] The generalized language which remains, even including paragraph 32, is no more than what the Illinois court in Dull, supra, accurately characterized as "precatory only," 392 N.E.2d at 424, and therefore insufficient to preclude modification. Compare also Eddings v. Eddings, 230 Ga. 743, 199 S.E.2d 255 (1973) (cited in Turner; totality of language sufficient to indicate waiver) with McClain v. McClain, supra (terms insufficient for valid waiver).
The court of appeal cases reveal the insufficiency of the agreement even more *1208 clearly. Thus, in Stebbins, the agreement provided:
The parties agree that neither shall file any modification proceedings as to alimony or support matters herein based on an increase of the income of either party.
435 So.2d at 384. In Turner, the language was as follows:
It is the intent of the parties that each shall waive, and each does hereby waive, any right to apply for an increase or decrease in the permanent alimony provided by this Agreement, each intending to establish irrevocably as the alimony which the Husband shall pay to the Wife those payments and transfers set forth in this Agreement.
383 So.2d at 703. In Kilpatrick v. McLouth, 392 So.2d 985 (Fla. 5th DCA 1981), the court observed:
The agreement, which provided for an alimony award, specifically provided that the agreement was to be non-modifiable and that the wife waived or released any right to alimony modification.
392 So.2d at 986. In Jaffee, the parties agreed:
The parties acknowledge that the Wife is a trained registered nurse with supervisory experience, and in the event that the Wife should resume her nursing career in order to supplement her income, such resumption of work by the Wife shall not be the basis for the Husband to seek a reduction in alimony due to the Wife. [emphasis supplied.]
394 So.2d at 444. And in Muss v. Muss, 390 So.2d 415 (Fla. 3d DCA 1980), this court held that the following provision "conclusively," 390 So.2d at 417, waived the right to modification:

The parties agree that neither party may apply to the court for a modification of any such judgment or decree into which the provisions of this agreement shall be incorporated, with respect to alimony or support provisions, whether pursuant to § 1170 of the Civil Practice Act or any other provision or authority. [emphasis supplied][7]
390 So.2d at 416. The Bassetts' failure to indicate in any manner approaching that emphatically set out in all of these cases precludes acceptance of the husband's present position.[8]
For this reason, the order under review is reversed and the cause remanded for determination of the appellant's motion for modification on its merits.[9]
Reversed.
*1209 BARKDULL, Judge dissenting.
I respectfully dissent. In the order under review the following is found:
"Petitioner/wife and respondent/husband, freely and willingly entered into a Marital Settlement Agreement (Agreement) on December 6, 1955. The purpose of the Agreement was to settle all rights and duties of the parties and to effect a permanent division between them in contemplation of a Final Decree of divorce after nine years of marriage."
* * * * * *
"In Lee v. Lee, 157 Fla. 439, 26 So.2d 177 (1946), the only decision of the Supreme Court of Florida existing in 1955 (the time of the agreement between the parties to this case) which addressed the issue of waiver of the statutory right to modification, a final decree of divorce was entered which incorporated an earlier separation agreement in accordance with its terms. Thereafter, the former wife filed a petition for modification of the final decree under Fla. Stat. § 65.15, a predecessor of current Section 61.14, seeking payments greater than those provided for in the separation agreement. The trial court denied the petition. The Supreme Court, construing the separation agreement incorporated into the divorce decree, held that the wife was estopped from claiming any relief on her own behalf.[*]
With the exception of the names of the parties, Paragraph 32 of the Agreement is identical to the provision construed by the Supreme Court of Florida in Lee v. Lee, 157 Fla. 439, 28 26 So.2d 177 (1946)."
* * * * * *
"The intent of the parties as demonstrated by this provision and multiple other provisions of the agreement was to establish as a final settlement between the parties the amounts provided therein. See paragraphs F, 16, 23, 26, 28, 30, 32 and 35. The parties intended that their settlement contract be a final determination of their rights and interests. In paragraph 28 of the Agreement, the parties expressly release and discharge one another from any and all claims and causes of action. Paragraph 30 includes another release. In her testimony, Mrs. Bassett acknowledged that the purpose of a release is to `let somebody free of certain promises... .' (Tr-158), and admits that in paragraph 26 of the Agreement all of her `claims' against Mr. Bassett are released (Id.).
Paragraph F of the Agreement indicates the understanding of the parties that that payments and trust provisions which the wife was to receive were accepted by her and were made by respondent in full and complete discharge and satisfaction of any and all claims she might have against him. Paragraph 16 declares the wife's acceptance of the trust and the monthly `alimony' in `full and complete discharge, settlement and satisfaction of any and all claims of the wife for her support and maintenance now or in the future ... .'(Tr-179. Emphasis added). The Lee decision is precedent for the binding effect of this contractual provision and the waiver thereby of the statutory right to seek modification. See Jaffee, 394 So.2d at 446, Turner, 383 So.2d at 704.
Mrs. Bassett's execution of the multiple waivers contained in the Agreement was knowing and voluntary. She acknowledges that she read each and every paragraph of the Marital Settlement Agreement, that several attorneys explained them to her (Tr-153; 1955 Tr-9; see also Dunn-25-28, Tr-181, 182), and that she understood the Agreement to be a `final settlement' of her financial arrangements with Mr. Bassett (1955 Tr-12)."
* * * * * *
"The words of the agreement clearly provide for a waiver and the testimony of the witnesses who demonstrated any competence on this issue support these clear terms as the intention of the parties. *1210 It is difficult to imagine why the parties would use the Lee v. Lee language if they did not want a Lee v. Lee result.
Regardless of the burden of proof which is applied to this case, it has been met by respondent. This court finds that Mrs. Bassett voluntarily waived any right to modification which she might have had under the Florida Statutes."
[*] The Court did allow modification of the child support obligation stating that a contract cannot impair the obligation of a father to support his children. Id. at 179. Child support is not at issue in this action.
Counsel for Mr. Bassett at the time of the execution of the agreement testified he included the Lee language for the purpose of no future modification and that he so told this to counsel for Mrs. Bassett at the time of execution.[1] I see no reason to disturb the trial court's finding and denial of relief and I would therefore affirm.

OPINION ON REHEARING
BARKDULL, Judge.
By this appeal we are called upon to review an order denying a petition for modification of a final decree of divorce which was entered on December 7, 1955 and which incorporated therein and made a part thereof for all purposes, with the same force and effect as if set forth in haec verba herein, an agreement of the parties which among other things waived the right to any modification. The order reads as follows:
"This cause came for hearing on the Petitioner's motion for modification of a final decree. The respondent has answered, interposing affirmative defenses and the Court set a hearing for determination of the issues relating to the right of the Petitioner to modification. After hearing testimony and argument, the Court is prepared to rule.
Petitioner/wife and respondent/husband, freely and willingly entered into a Marital Settlement Agreement (Agreement) on December 6, 1955. The purpose of the Agreement was to settle all rights and duties of the parties and to effect a permanent division between them in contemplation of a Final Decree of divorce after nine years of marriage. The final decree of Divorce, entered December 7, 1955, incorporated the Agreement which contained the following paragraph:
32. In the event of any Final Decree of Divorce being entered in the Pending Action, such Decree shall include the following Language: "With the exception of the terms, conditions, covenants, agreements and stipulations, as hereinabove set out, the Plaintiff is hereby denied any rights of alimony, attorney's fees or costs of this suit, as well as any rights of property, whether same be real or personal, in and to the separate estate of the Defendant, and the Plaintiff, MARGUERITE PETITJEAN BASSETT, and the Defendant, HARRY HOOD BASSETT, are hereby permanently enjoined from claiming any rights of property, or any other claims, demands, causes of action, inheritance or descent that each may have or have had against the other by virtue of the marriage between the parties herein divorced."
In November 1980, the wife petitioned for modification of the divorce decree pursuant to Section 61.14, Florida Statutes, claiming a substantial change in her financial circumstances, an increase in her living expenses and an increase in the husband's financial resources.
The husband answered the petition and raised as an affirmative defense that the wife had, by the terms of the Agreement, waived any rights she might otherwise have had for modification. Furthermore, *1211 the Agreement was characterized as a property settlement and not subject to modification.
The matter is before the court solely on the claim for modification and the defenses and legal questions raised in this action.
Florida courts have consistently held that the parties to a divorce may waive a statutory right to modification of alimony, if such a right exists. See Lee v. Lee, 157 Fla. 439, 26 So.2d 177 (1946); Turner v. Turner, 383 So.2d 700 (Fla. 4th DCA), pet. for rev. den., 392 So.2d 1381 (Fla. 1980); Jaffee v. Jaffee, 394 So.2d 443 (3d DCA 1981); Muss v. Muss, 390 So.2d 415 (Fla. 3d DCA 1980); Kilpatrick v. McLouth, 392 So.2d 985 (Fla. 5th DCA 1981). The waiver may be intentional or implied and is to be determined based upon the totality of the circumstances and the language of any stipulated settlement. See Stephenson v. Stephenson, 408 So.2d 730, 731 (Fla. 1st DCA 1982). Such a waiver does not violate the public policy of the state. Turner, 383 So.2d at 703; Muss, 390 So.2d at 417.
In Lee v. Lee, 157 Fla. 439, 26 So.2d 177 (1946), the only decision of the Supreme Court of Florida existing in 1955 (the time of the agreement between the parties to this case) which addressed the issue of waiver of the statutory right to modification, a final decree of divorce was entered which incorporated an earlier separation agreement in accordance with its terms. Thereafter, the former wife filed a petition for modification of the final decree under Fla. Stat. § 65.15, a predecessor of current Section 61.14, seeking payments greater than those provided for in the separation agreement. The trial court denied the petition. The Supreme Court, construing the separation agreement incorporated into the divorce decree, held that the wife was estopped from claiming any relief on her own behalf.[*]
With the exception of the names of the parties, Paragraph 32 of the Agreement is identical to the provision construed by the Supreme Court of Florida in Lee v. Lee, 157 Fla. 439, 28 So.2d 177 (1946).

 LEE v. LEE BASSETT AGREEMENT, ¶ 32
"With the exception of the terms, "With the exception of the terms,
conditions, covenants, agreement conditions, covenants, agreements and
and stipulations, as hereinabove stipulations, as hereinabove set out,
set out, the plaintiff is hereby the Plaintiff is hereby denied any
denied any rights of alimony, rights of alimony, attorney's fees or
attorney's fees or costs of this costs of this suit, as well as any
suit, as well as any rights of rights of property, whether same be
property, whether same be real or real or personal, in and to the
personal, in and to the separate separate estate of the Defendant, and
estate of the Defendant, and the the Plaintiff, MARGUERITE PETITJEAN
plaintiff, Betty Lee, and the BASSETT, and the Defendant, HARRY HOOD
defendant Manfred B. Lee, are BASSETT, are hereby permanently
hereby permanently enjoined from enjoined from claiming any rights of
claiming any rights of property or property or any other claims, demands,
any other claims, demands, causes causes of action, inheritance or
of actions, inheritance or descent descent that each may have or have had
that each may have or have had against the other by virtue of the
against the other by virtue of marriage between the parties herein
the marriage between the parties divorced."
herein divorced."

The intent of the parties as demonstrated by this provision and multiple other provisions of the Agreement was to establish as a final settlement between the parties the amounts provided therein. See paragraphs F, 16, 23, 26, 28, 30, 32 and 35. The parties intended that their settlement contract be a final determination *1212 of their rights and interests. In paragraph 28 of the Agreement, the parties expressly release and discharge one another from any and all claims and causes of action. Paragraph 30 includes another release. In her testimony, Mrs. Bassett acknowledged that the purpose of a release is to "let somebody free of certain promises... ." (Tr-158), and admits that in paragraph 26 of the Agreement all of her "claims" against Mr. Bassett are released (Id.).
Paragraph F of the Agreement indicates the understanding of the parties that payments and trust provisions which the wife was to receive were accepted by her and were made by respondent in full and complete discharge and satisfaction of any and all claims she might have against him. Paragraph 16 declares the wife's acceptance of the trust and the monthly "alimony" in "full and complete discharge, settlement and satisfaction of any and all claims of the wife for her support and maintenance now or in the future... ." (Tr-179. Emphasis added).
The Lee decision is precedent for the binding effect of this contractual provision and the waiver thereby of the statutory right to seek modification. See Jaffee, 394 So.2d at 446; Turner, 383 So.2d at 704.
Mrs. Bassett's execution of the multiple waivers contained in the Agreement was knowing and voluntary. She acknowledges that she read each and every paragraph of the Marital Settlement Agreement, that several attorneys explained them to her (Tr-153; 1955 Tr-9; see also Dunn-25-28, Tr-181, 182), and that she understood the Agreement to be a "final settlement" of her financial arrangements with Mr. Bassett (1955 Tr-122). Every effort was made to assure her understanding (Dunn, 5/26/83). Judge J. Fritz Gordon questioned Mrs. Bassett extensively regarding the Agreement at the time the divorce decree was entered:
Q. Do you understand that this is a final settlement of your financial arrangements with Mr. Bassett?
A. I understand.
Q. And are you satisfied with that?
A. Yes.
Q. Do you have knowledge of all his finances in accepting this?
A. Yes.
Q. You have full knowledge of his financial conditions?
A. Yes.
Q. And with that full knowledge you have agreed to accept what is to be given to you under the terms of the contract and a full and final settlement of any claims that you might have against him 
A. I do.
Q. (Continuing) is that correct?
A. Yes.
(1955 Tr-12)
Petitioner has adduced no evidence to the effect that her execution of the waiver was involuntary. A self-serving statement of petitioner that she believed that she could come back to court and get modification while giving up all of her other rights against Mr. Bassett (Tr-136), was made, and one of her attorneys, who, although he acknowledged the meaning of the words of waiver and release in the agreement, concluded that no matter what the Agreement says, it can be modified (Dunn, 5/26/83). This conclusion contradicts the holdings in Lee v. Lee, supra; Jaffee v. Jaffee, 394 So.2d 443 (Fla. 3rd DCA 1981); Kilpatrick v. McLouth, 392 So.2d 985 (Fla. 5th DCA 1981); Muss v. Muss, 390 So.2d 415 (Fla. 3rd DCA 1980); and Turner v. Turner, 383 So.2d 700 (Fla. 4th DCA 1980); all held waiver of modification valid. Counsel who conducted Mrs. Bassett's negotiations and made her decisions concerning the Agreement has no independent recollection of that document (Tr-88-95) or whether a waiver was intended. Never was the voluntariness of the waiver questioned.
The words of the agreement clearly provide for a waiver and the testimony of *1213 the witnesses who demonstrated any competence on this issue support these clear terms as the intention of the parties. It is difficult to imagine why the parties would use the Lee v. Lee language if they did not want a Lee v. Lee result.
Regardless of the burden of proof which is applied to this case, it has been met by respondent. This court finds that Mrs. Bassett voluntarily waived any right to modification which she might have had under the Florida Statutes.
It is, therefore,
ORDERED, on the basis of this opinion and the evidence presented at final hearing, that the wife's Petition for Modification of Final Decree of Divorce is hereby DENIED. The parties shall bear their own legal expenses and costs, including attorney's fees."
The trial judge should be affirmed in his ruling. First, the agreement is unambiguous. It, clearly under the law as it existed at the time it was executed,[1] provided for a waiver of any right to modify. Lee v. Lee, 157 Fla. 439, 26 So.2d 177 (1946). The Lee decision certainly should control construction of this agreement. Not only are its terms incorporated verbatim in the agreement but the appellee herein set up a trust of $250,000, pursuant to the agreement, which guaranteed appellant at least $10,000 per year (which trust today is probably returning in the neighborhood of $25,000 a year).[2] This is similar to the automatic increases in the Lee agreement based on the husband's increased earnings and the parties were enjoined from seeking modification in the same language as in Lee.[3] Second, if the agreement was in need of clarification the evidence clearly supported an interpretation providing for a waiver of modification rights. The parties for over 25 years treated it as nonmodifiable. Blackhawk Heating & Plumbing Co., Inc., v. Data Lease Financial Corp., 302 So.2d 404 (Fla. 1974); Shouse v. Doane, 39 Fla. 95, 21 So. 807 (1897); Bay Management, Inc., v. Beau Monde, Inc., 366 So.2d 788 (Fla. 2d DCA 1978). Counsel for Mr. Bassett at the time of the execution of the agreement testified he included the Lee language for the purpose of no future modification and that he so told this to counsel for Mrs. Bassett at the time of execution.[4] *1214 We see no reason to disturb the trial court's finding and denial of relief and we therefore affirm.
Affirmed.
SCHWARTZ, Chief Judge (dissenting).
I respectfully adhere to my view, as expressed in the original majority opinion in this cause, that the judgment below should be reversed.
NOTES
[1] Contra, inter alia, the Rhode Island and Missouri cases cited in Turner, supra, at 383 So.2d 704.
[2] Georgia cases were cited with approval as to the waivability holding generally in Turner, supra, at 383 So.2d 703-04.
[3] These provisions are as follows:

F. The Wife desires to receive and accept the trust provisions and the payments hereinafter set forth to be made by the Husband in full and complete discharge, settlement and satisfaction of any and all claims of the Wife for her support and maintenance, and for the support, maintenance and education of the Children, and in full and complete discharge, settlement and satisfaction of any and all other claims of the Wife against the Husband, and the Wife hereby agrees to accept the conditions for the custody of the Children determined between the parties, as hereinafter set forth, and the Husband desires and agrees to create the trust and to make the payments to the Wife hereinafter set forth for the support and maintenance of the Wife and of the Children and the Husband hereby agrees to accept the conditions for the custody of the Children determined between the parties, as hereinafter set forth.
* * * * * *
4. The parties agree that in the event a decree of divorce is rendered in the Pending Action, the provisions hereinafter set forth with respect to alimony, support of the Children and custody of the Children shall be the provisions of the decree with respect thereto, all subject however to the approval of the Court. The parties agree, however, that neither of them, in connection with the making and entry of said decree, shall make application for alimony, support of the Children and custody of the Children other than or different from those provided herein.
* * * * * *
16. The Wife agrees to accept the payments of the Wife's Alimony Trust and the Monthly Alimony hereinbefore set forth to be paid by the Husband in full and complete discharge, settlement and satisfaction of any and all claims of the Wife for her support and maintenance now or in the future or of any other claim that she may have to date. In addition, the Wife agrees to accept payment of the Children's Support Monies and of the monies specified in this agreement for the maintenance, support and education of the Children, in full and complete discharge, settlement and satisfaction of any claims for the maintenance, support and education of the Children. The Wife agrees that the payments provided in this agreement to be made by the Husband for the maintenance, support and education of the Children are reasonable and adequate in all respects.
* * * * * *
23. The Wife agrees to release, and does hereby release, any and all claims of the Wife to or upon the property of the Husband, whether real or personal and whether now or hereafter acquired, including any right of dower, homestead or inheritance, to the end that the Husband shall have free and unrestricted right to dispose of his property, now or hereafter acquired, free from any claim or demand of the Wife, and so that his estate and all income therefrom derived or to be derived shall go and belong to the person or persons who become entitled thereto by Will or by devise, bequest, intestacy, administration or otherwise, as if the Wife had died during the lifetime of the Husband, and, without in any manner limiting the foregoing, the Wife expressly relinquishes any and all rights in the estate of the Husband, and expressly relinquishes any and all right of election to take any share of the estate of the Husband as in intestacy and any and all other right and interest in any real or personal property of which the Husband may die seized or possessed, and the Wife renounces and covenants to renounce, any right of administration upon the estate of the Husband, if and as required by the laws or practice of any jurisdiction whatsoever, except that nothing in this paragraph contained shall affect the Husband's obligation under paragraph 5(a) and 11(b) of this agreement.
* * * * * *
26. The Wife hereby relinquishes, releases quitclaims, sells, transfers, sets over and assigns to the Husband any and all claim, right, title and interest whatsoever which she now has or may hereafter have, or may claim to have, whether at law or in equity, in any funds, assets or property, real or personal, now owned by or standing in the name of or hereafter acquired by or on behalf of the Husband, either alone or with others, including but not by way of limitation any and all right, claim, title and interest the Wife now has or may hereafter acquire in any property deemed to be community property by reason of any law of any state or country of the world, or in which the Wife may have or be deemed or construed to have any lien or trust or other interest.
28. Except for the obligations, promises and agreements herein set forth and to be performed by the parties hereto, which are hereby expressly reserved, each of the parties hereto hereby for himself and herself, and for his or her legal representatives, forever releases and discharges the other of them and his or her heirs and legal representatives from any and all debts, sums of money, accounts, contracts, claims, cause and causes of action, suits, dues, sums of money, accounts, reckoning, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, and demands whatsoever, in law or in equity, which each of them had, now has or hereafter can, shall or may have by reason of any matter from the beginning of the world to the execution of this agreement.
* * * * * *
30. (A) The Wife shall and will hold the Husband free and harmless from and indemnified against all debts, liabilities and obligations, of every kind and nature whatsoever, for necessaries or otherwise, at any time heretofore or after the date of this agreement incurred by her for the benefit of herself or the Children.
* * * * * *
32. In the event of any Final Decree of Divorce being entered in the Pending Action, such Decree shall include the following language:
"With the exception of the terms, conditions, covenants, agreements and stipulations, as hereinabove set out, the Plaintiff is hereby denied any rights of alimony, attorney's fees or costs of this suit, as well as any rights of property, whether same be real or personal, in and to the separate estate of the Defendant, and the Plaintiff, MARGUERITE PETITJEAN BASSETT, and the Defendant, HARRY HOOD BASSETT, are hereby permanently enjoined from claiming any rights of property, or any other claims, demands, causes of action, inheritance or descent that each may have or have had against the other by virtue of the marriage between the parties herein divorced."
* * * * * *
35. No modification, rescission or amendment to this agreement shall be effective unless in writing, signed by the parties hereto.
* * * * * *
[4] The wife cites equally unpersuasive contractual indications to the contrary.
[5] See note 3, supra.
[6] We take some comfort from the fact that if the supreme court, which obviously knows its own institutional will best, disagrees with our analysis of Lee, it may review this decision under Art. V, Section 3(b)(3), Florida Constitution (1980); Fla.R.App.P. 9.030(a)(2)(A)(iv).
[7] The weakness of the appellee's position is highlighted by his unaccountable insistence at oral argument that this provision is equivalent to paragraph 4 of the present agreement, note 3, supra, which says only that neither party shall make application for "alimony ... other than ... provided herein," and makes no reference whatever to "modification" as is specifically contained in the Muss agreement.
[8] As in the conceptually similar case of Chippas v. Midland Ins. Co., 456 So.2d 495, n. 5 (Fla. 3d DCA 1984), our determination that the terms of the agreement itself were insufficient under the appropriate standard of construction to effect a valid waiver leads to the concomitant conclusion that the trial court improperly received extrinsic evidence concerning the intention of the parties on the critical point. Cases cited, Chippas, supra, n. 5. Parol testimony is inadmissible to correct the use of legally insufficient or defective language or to rewrite the contract by supplying verbiage the parties did not themselves choose to include. Carson v. Palmer, 139 Fla. 570, 190 So. 720 (1939); Crown Management Corp. v. Goodman, 452 So.2d 49, 52 (Fla. 2d DCA 1984), and cases cited; Ace Electric Supply Co. v. Terra Nova Electric, Inc., 288 So.2d 544 (Fla. 1973); see generally, Jaffee v. Jaffee, supra, and cases collected at 394 So.2d 443 (testimony as to intent of husband incompetent "as an attempt to vary the terms of a written document through the insertion of qualifying language which does not appear on its face").

We note, moreover, that, as was also the case in Chippas, the evidence which was adduced indicated only that no one had specifically considered the modification issue one way or the other when the agreement was executed. It thus could have added nothing to the consideration or resolution of the question before us, which is properly confined to the sufficiency and effect of the instrument itself. See also Mohasco Industries, Inc. v. Maxwell Co., 425 F.2d 436 (5th Cir.1970).
[9] The agreement is plainly not a "true" property settlement agreement which would be non-modifiable on that basis. E.g., Pujals v. Pujals, 414 So.2d 228 (Fla. 3d DCA 1982); Wolfe v. Wolfe, 424 So.2d 32 (Fla. 4th DCA 1982); compare, Shaw v. Shaw, 448 So.2d 631 (Fla. 4th DCA 1984), and cases cited.
[1] "Q. If this was based on Lee, as was mentioned, your recollection is, that you specifically mentioned that to Mrs. Bassett's attorney. This is from the case of Lee versus Lee. Right?

A. Of course, it is quoted from it. Where did you get this language, or something like that. `It came out of the latest pronouncement of the Florida Supreme Court.'"
[*] The Court did allow modification of the child support obligation stating that a contract cannot impair the obligation of a father to support his children. Id. at 179. Child support is not at issue in this action.
[1] Shavers v. Duval County, 73 So.2d 684 (Fla. 1954); Southern Crane Rentals, Inc. v. City of Gainesville, 429 So.2d 771 (Fla. 1st DCA 1983); General Development Corporation v. Catlin, 139 So.2d 901 (Fla. 3d DCA 1962); Coast Cities Coaches, Inc. v. Whyte, 102 So.2d 848 (Fla. 3d DCA 1958).
[2] "In the event that such income shall in any calendar year be less than $10,000, the Trustee is directed to pay out of the principal of the trust an amount equal to the difference between such income and $10,000."
[3] LEE v. LEE BASSETT AGREEMENT, ¶ 32
"With the exception of the terms, "With the exception of the terms,
conditions, covenants, agreement conditions, covenants, agreements and
and stipulations, as hereinabove stipulations, as hereinabove set out,
set out, the plaintiff is hereby the Plaintiff is hereby denied any
denied any rights of alimony, rights of alimony, attorney's fees
attorney's fees or costs of this or costs of this suit, as well as any
suit, as well as any rights of rights of property, whether same be
property, whether same be real or real or personal, in and to the
personal, in and to the separate separate estate of the Defendant, and
estate of the Defendant, and the the Plaintiff, MARGUERITE PETITJEAN
plaintiff, Betty Lee, and the BASSETT, and the Defendant, HARRY HOOD
defendant Manfred B. Lee, are BASSETT, are hereby permanently
hereby permanently enjoined from enjoined from claiming any rights of
claiming any rights of property or property or any other claims, demands,
any other claims, demands, causes causes of action, inheritance or
of actions, inheritance or descent descent that each may have or have had
that each may have or have had against the other by virtue of the
against the other by virtue of the marriage between the parties herein
marriage between the parties herein divorced."
divorced."

[4] If this was based on Lee, as was mentioned, your recollection is that you specifically mentioned that to Mrs. Bassett's attorney, `this is from the case of Lee v. Lee', right?
A. Of course it is quoted from it. Where did you get this language, or something like that. `It came out of the latest pronouncement of the Florida Supreme Court.'"